587 So.2d 928 (1991)
Donnie B. GREGG
v.
Betty Charlotte Gregg MONTGOMERY.
No. 90-CA-0869.
Supreme Court of Mississippi.
October 16, 1991.
*929 Martin A. Kilpatrick, Greenville, for appellant.
Richard A. Oakes, Burgoon & Oakes, Greenwood, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the Court:
The chancery court of Washington county rendered judgment against Donnie B. Gregg for child support arrearage in the amount of $2,019.57, but denied alimony in arrears finding that the former wife released Gregg from alimony payments with a written release. Donnie has appealed, and his former wife, Charlotte, has cross-appealed for denial of alimony in arrears, modification in child support payments and attorney's fees.
We find that the alimony in arrears should be awarded to Charlotte and reverse. We remand as to attorney's fees for further determination by the chancery court. Otherwise, we affirm on her cross-appeal and the direct appeal.

FACTS
Donnie and Charlotte married August 29, 1970. They have two children, Eric Garner, born August 26, 1979 and Jessica Dianne, born August 14, 1985.
On March 3, 1986, they secured judgment of divorce from the chancery court of Washington County on the no-fault ground of irreconcilable differences. A separation, child custody, support, and property settlement agreement was submitted to the court pursuant to Miss. Code Ann. § 93-5-2 (Supp. 1986). It was approved by the chancellor and attached to the judgment as exhibit A. The agreement provided in pertinent part:
Paragraph 4  Husband agrees to pay unto Wife the sum of $300.00 per month for the support and maintenance of the said minor children, said support to be due and payable in two installments of $150.00 each due and payable on the 1st and 15th of each and every month, commencing on December 15, 1985, and to continue thereafter until further Order *930 of an appropriate court or until the legal emancipation of the children herein involved;
Paragraph 5  Husband agrees to maintain in full force and effect a policy of medical insurance affording benefits to the minor children herein involved. Husband agrees to be responsible for one-half (1/2) of all medical, dental, visual or drug expenses incurred by or on behalf of said minor children which are not covered by said insurance policy.
Paragraph 8  Husband and Wife agree that they should each bear one-half (1/2) of the total cost of a private school education for the minor children herein involved for grades 1 through 12;
Paragraph 9  The parties hereto agree that Wife shall be entitled to declare the minor children herein involved as dependents for income tax purposes;
Paragraph 10  Husband agrees to pay unto Wife the sum of $100.00 per month as alimony, said sum to be due and payable on or before the 15th day of each and every month, commencing on December 15, 1985, until Wife's death or her remarriage;
At the time of the divorce and for several months thereafter Donnie was earning $300.00 to $325.00 every two weeks in a part-time job as a carpenter. His income had been higher when the divorce action began. In August, 1986, Donnie became a member of the Leland Police Department. His adjusted gross income in 1986 was $8,134.48. It steadily rose, in 1989 reaching $21,000. In July, 1990, his net pay was $933.04 a month. He also received a monthly disability check of $280.00 for a service-related injury sustained in the Vietnam war, making his monthly adjusted gross income in July, 1990, $1,213.04.
Charlotte was earning $4.00 an hour at the time of the divorce. She earned $1,065.00 a month in July of 1990.
From March to December, 1986, Donnie failed to make a total of $1,270.00 in child support payments. From December, 1986, on, Donnie met his child support obligation. He also failed to pay one-half of the children's medical expenses from 1986 to 1988, which amounted to $196.15 and private school expenses of $105.25. Donnie maintained insurance coverage for the children, paying $54.77 every two weeks. This amount has increased from the initial payment of approximately $40.00 in 1986.
Donnie never made any of the $100.00 per month alimony payments to Charlotte. When Charlotte attempted to discuss the alimony payments with Donnie over the phone, "he got very angry ... and came over to [her] house and threatened [her] and told [her] that [she] would never get a penny[;] he would skip the country...." Charlotte never sought legal action against Donnie "because every time [she] would confront him about any arrearage" he would get angry and threaten her, which would upset the kids. Charlotte thought it was easier to do nothing than be threatened and upset the kids. Donnie admitted that there were arguments about alimony payments after the divorce.
Donnie claims that he has "never been held to [the alimony]," saying he thought the alimony would only be necessary if Charlotte was in financial distress. Donnie stated:
... when [he] read the final divorce decree that [Charlotte] had filed, before [he] signed it, she explained to [him] that her lawyer advised her to put it [alimony provision] in there in case something come up to where she was unable to work or something like that and needed some more money.
On cross-examination Donnie conceded that he understood the property settlement agreement and that no one made him sign it.
In May, 1988, Donnie and his new wife, Lynda, wanted to buy a mobile home. They were unable to obtain financing for the home because of the $100 a month alimony Donnie had to pay to his former wife, Charlotte. They asked Charlotte if she would write a letter stating that she waived Donnie's obligation to pay the alimony.
The letter stated in full:

*931 This is to verify that Donnie Gregg pays $300 a month child support and provides medical insurance for his two children. He does not pay me the $100.00 alimony as I have not held him to this obligation.
(signed) Charlotte Gregg May 22, 1988
Charlotte testified she did not intend to waive the alimony, but was doing Donnie a favor so they could buy the mobile home. Donnie claimed that Charlotte's letter released him from his alimony obligation, but admitted that the sole purpose of the letter was to obtain financing for the mobile home.
Charlotte remarried on April 15, 1989, terminating Donnie's obligation to pay alimony. The testimony established that unpaid and overdue alimony payments with interest amounted to $4,568.74. This included all alimony payments due from the date the chancellor ordered payments to begin until Charlotte's remarriage April 15, 1989.
On March 27, 1990, Donnie filed his motion to modify the amount of his child support payment based upon an alleged change in the circumstances of the parties. Charlotte filed a counterclaim seeking recovery of child support arrearage and past due alimony. She also sought to modify the amount of child support payments as well as requesting an issuance of a contempt citation against Donnie for failure to comply with the court-ordered settlement agreement.
The chancellor denied requests for a change in child support because the material change in circumstances had occurred since the date of the divorce decree. He also denied Charlotte recovery of alimony in arrears because the May 22, 1988, letter evidenced an intent to waive alimony payments. The chancellor further denied Charlotte attorney's fees, but did award her past due child support of $2,019.57.
Donnie has appealed this judgment. Charlotte has cross-appealed.

LAW
In appeals from chancery court, the Court's scope of review is limited: "This court will not reverse a chancery court's findings of fact where they are supported by substantial credible evidence in the record." Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss. 1991); Clark v. Myrick, 523 So.2d 79, 80 (Miss. 1988).
More specifically, in cases involving alimony and child support, the Court has held that it "is a matter within the discretion of the chancellor and that this appellate court will not reverse unless the chancellor was manifestly in error in his finding of fact and manifestly abused his discretion." Powers v. Powers, 568 So.2d 255, 258 (Miss. 1990); Carpenter v. Carpenter, 519 So.2d 891, 894-895 (Miss. 1988).

I. DIRECT APPEAL

A. Donnie's Arrears
Donnie's first assigned error presents the question of whether he should have been ordered to pay any arrears when he was financially unable to comply with the decree.
Miss.Code Ann § 93-5-2 (Supp. 1990) governs modifications of divorce decrees issued on the ground of irreconcilable differences. Lawrence v. Lawrence, 574 So.2d 1376, 1380 (Miss. 1991); Morris v. Morris, 541 So.2d 1040, 1042-43 (Miss. 1989). After the agreement has become incorporated into the judgment, it may be modified as other judgments for divorce as set forth in Miss. Code Ann. § 93-5-23. Miss. Code Ann. § 93-5-2 (Supp. 1990). Once the provisions of § 93-5-2 have been met, "the custody, support, alimony and property settlement agreement becomes a part of the final decree for all legal intents and purposes." Lawrence, 574 So.2d at 1380, citing Switzer v. Switzer, 460 So.2d 843, 845 (Miss. 1984).
In order to justify changing or modifying the divorce decree, "there must have been a material or substantial change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified." Lawrence, 574 So.2d at 1380; Morris, 541 *932 So.2d at 1042-43; Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983).
Donnie cites Kincaid v. Kincaid, 213 Miss. 451, 57 So.2d 263 (1952), to support the proposition that he was financially unable to comply with the divorce decree. In Kincaid, the Court quoted Amis on Divorce and Separation in Mississippi, Section 206, in holding that:
... a husband may not ask for modification of the original decree without showing that he has performed it or that its performance has been wholly impossible... [and] if the husband undertakes to exonerate himself because of his inability to pay, his proof must conform to those rules, namely: `That he earned all he could, that he lived economically and paid all surplus money above a living on the alimony decreed to the wife' ... [a]nd such proof must be made with particularity and not in general terms.
Id. 213 Miss. at 456, 57 So.2d 263.
The Court further stated: "The payment of other debts or expenses will not excuse or justify his default, unless such payment was necessary in order to continue his business or occupation, because his wife's right to alimony is a prior and paramount claim on his earnings." Id.
In Taylor v. Taylor, 348 So.2d 1341, 1343 (Miss. 1977), we followed Kincaid in holding that a husband could not request a modification in a divorce decree to reduce alimony when he was unable to show in "particular and not general terms" that he had complied with the decree or that it was impossible to fully comply with the decree. See Hooker v. Hooker, 205 So.2d 276, 278 (Miss. 1967).
The record reveals that Donnie failed to offer substantial evidence which was "particular and not general" to support his contention that he was financially unable to meet his child support obligations. Moreover, Donnie's argument that he had to pay other bills before making payments to Charlotte is meritless. Kincaid holds that "the payment of other debts or expenses will not excuse or justify his default" because the alimony payments are paramount. Kincaid, 57 So.2d at 264.
The fact that Donnie additionally failed to pay for one-half of the medical expenses from 1986 to 1988 and one-half of private school expenses in 1989 indicates that financial hardship was not the sole factor in Donnie's failure to make payments, since he held a well paying job after August of 1986.
The chancellor's finding that Donnie should pay child support arrearage was correct.

B. Material Change?
Donnie filed his motion to modify the prior divorce decree on March 28, 1990. He requested that the court decrease his monthly child support payments because a material and substantial change in circumstances arose subsequent to the entry of the decree to be modified.
In order to justify changing or modifying the divorce decree "there must have been a material or substantial change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified." Lawrence, 574 So.2d at 1380; Morris, 541 So.2d at 1042-43; Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983).
Donnie argues that the enactment of the child support award guidelines in Miss. Code Ann. § 43-19-101 (Supp. 1990) is the "material change in circumstances" that warrants a modification of the decree. This statute provides that child support payments for two children should be twenty percent (20%) of the adjusted gross income of the parent ordered to pay child support. Donnie's child support payments were more than twenty percent of his adjusted gross income.
In Thurman v. Thurman, 559 So.2d 1014, 1017 (Miss. 1990), the chancellor relied on federal child support guidelines in determining modified child support payments, which are codified at Miss. Code Ann. § 43-19-101 (Supp. 1990). In finding his actions in error, we stated that the chancellor "assumed that [he was] bound to follow the Child Support Award Guidelines when he is *933 not so bound and further because it assumes a material change in circumstances related to the guideline amounts without sufficient proof of such a material change." Id. at 1018. The Court further commented:
"Certainly the guidelines are relevant and may be considered by a chancellor as an aid, but the guidelines may not determine the specific need or the specific support required[;] this is to be done by a chancellor at a time real, on a scene certain, and with a knowledge special to the actual circumstances and to the individual child or children."
Id. See also Jellenc v. Jellenc, 567 So.2d 847, 848 (Miss. 1990).
There was no error in the chancellor's findings that "no material change in circumstances" justifying modification.

II. CROSS-APPEAL

A. Alimony in Arrears
On cross-appeal, Charlotte contends that:
(1) the chancellor erred in not awarding alimony in arrears;
(2) the chancellor erred in not increasing child support; and
(3) the chancellor erred in denying Charlotte attorney's fees.
The chancellor found that the letter written on May 22, 1988, evidenced an intent to waive the alimony, barring Charlotte's claim for recovery of unpaid alimony.
Periodic alimony becomes fixed and vested on the date in which the payment is due and unpaid. Lewis v. Lewis, 586 So.2d 740 (Miss. 1991); Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990); Rubisoff v. Rubisoff, 242 Miss. 225, 235, 133 So.2d 534, 537 (1961). More importantly, a court cannot give relief from civil liability for any payments that have already accrued. Id. Rainwater v. Rainwater, 236 Miss. 412, 420-421, 110 So.2d 608, 611 (1959).
Where a chancery court has set alimony payments, the parties cannot amend on their own without court approval. Bell v. Bell, 572 So.2d 841, 845 (Miss. 1990); East v. East, 493 So.2d 927, 931 (Miss. 1986); Taylor v. Taylor, 392 So.2d 1145 (Miss. 1981).
We held in Sullivan v. Pouncey, 469 So.2d 1233, 1234 (Miss. 1985), that a separate contract entered into between parties which is not incorporated into the final divorce decree is void. It would be tantamount to defrauding the court for parties to present to the court a property settlement agreement incorporated into the final decree, while actually intending to abide by a contradictory, private contract. This is clearly against public policy. Id.[1]
Although the letter from Charlotte to Donnie was subsequent to entry of the decree, the rule of Sullivan is still applicable. The letter would act as an instrument to deprive the court of its exclusive power to modify the decree to meet a change in circumstances and conditions of the parties as prescribed by statute. Miss. Code Ann. § 93-5-23 (Supp. 1990). In order for Charlotte to relieve Donnie of alimony payments, it would be necessary for her to file a motion to modify with the chancery court.
The chancellor erred in denying Charlotte unpaid and overdue alimony. Charlotte is entitled to alimony in arrears in the amount of $4,568.74.

B. Child Support Increase
Charlotte requested a $100 increase in child support to offset the growing expense of the general care and maintenance of the children. The chancellor, in reviewing Charlotte's request to increase child support payments, found that no material or substantial change in circumstances had occurred since the decree was issued.
In order to modify a child support payment, it must be shown that there has been a material or substantial change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent *934 to the entry of the decree to be modified. Caldwell, 579 So.2d at 547, citing Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983).
Some of the factors to consider in determining a material change in circumstances include the increased needs for growing children, increase in expenses, and the inflation factor. Caldwell, 579 So.2d at 547. Charlotte testified to some of these factors, but the chancellor did not consider them sufficiently substantial to alter the decree. We cannot say he was manifestly wrong.

C. Attorney's Fees
Finally, Charlotte contends that she should be awarded $1,600 in attorney's fees from the trial plus costs on appeal because Donnie's motion was not well grounded in law and fact, and she, as the defending spouse, should not have to bear the costs.
When the husband files a petition against his former wife in which he is unsuccessful, he is generally assessed with attorney's fees. This Court has said that when a former husband brings his former wife into court:
[s]eeking, without justification, alteration of his liability to her from a Court decree fixing it, [he] should pay for her an attorney's fee. Otherwise, he could sue her so often as to impose an oppressive burden on her allowance in resisting his repeated applications.
Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990); Gresham v. Gresham, 199 Miss. 778, 785, 25 So.2d 760, 762 (1946). It is also generally the law that the award and amount thereof of the attorney's fees is discretionary. Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990); Craft v. Craft, 478 So.2d 258, 265 (Miss. 1985).
In this case the chancellor denied attorney's fees because the services were rendered by Charlotte's employer. We find that Charlotte is entitled to a reasonable attorney's fee for having to defend Donnie's suit to modify, which was unsuccessful. We reverse and remand for the trial court to determine Charlotte's attorney's fees. At such hearing she should be required to show the reasonableness of such fees.
Because Charlotte was self-supporting we cannot say the chancellor was manifestly in error in denying fees as to her claims, Martin, supra, but we find that she is entitled to reasonable attorney's fees for having to defend Donnie's petition. Cumberland, supra.
ON DIRECT APPEAL: AFFIRMED AS TO CHILD SUPPORT ARREARAGE. ON CROSS-APPEAL: REVERSED AND RENDERED AS TO UNPAID ALIMONY; AFFIRMED AS TO CHILD SUPPORT MODIFICATION; REVERSED AND REMANDED AS TO ATTORNEY'S FEES.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., dissents without written opinion.
NOTES
[1] The recent decision of Varner v. Varner, Cause No. 90-CA-0287, ___ So.2d ___ (decided October 16, 1991, and not yet reported), may be distinguished because the chancellor upon strong equitable considerations granted equitable relief to a defaulting parent.