645 So.2d 1327 (1994)
Barbara S. PARKER
v.
Thomas L. PARKER.
No. 93-CA-0795.
Supreme Court of Mississippi.
December 1, 1994.
*1328 Mark W. Prewitt, Vicksburg, for appellant.
J. Mack Varner, Varner Parker Sessums & Underwood, Vicksburg, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
Here we are confronted with the question of whether a modification of child support may be occasioned by loss of income due to involuntary termination of employment for alleged intentional wrongful acts. We conclude that the loss of income is a substantial change in circumstances and that the reason for the loss is not such that modification should be denied. We, therefore, affirm the judgment of the trial court.

I.
On May 5, 1993, Thomas filed a Motion for Modification of Former Decree with the Chancery Court seeking modification of that decree as to the amount of child support. Thomas alleged that his lack of employment and resultant financial distress constitutes a substantial and material change in circumstances sufficient to warrant modification of the original divorce decree. Thomas testified as the only witness in the case. He had been employed with the South Delta School District as an automotive instructor since 1988. In March of 1993, he was terminated from his employment with the South Delta School District for sexual misconduct, an allegation which he continues to deny. He has appealed the decision of the School Board but remains unemployed.
Prior to his termination, Thomas' net monthly salary was approximately $1,600. As a result of his termination, Thomas now has no income and has become unable to meet his financial obligations, including the child support obligation of $300 per month. Since Thomas' termination, he has been actively seeking other employment, having made applications with several other school districts as well as private businesses for employment. Despite his efforts, Thomas has been unable to find employment.
The court granted Thomas' motion to modify the decree. It found that the fact that he lost employment with the Sharkey County School System was a substantial and material change in circumstances and that the former decree entered should be modified to provide that the amount of child support ordered to be paid in the sum of $300.00 per month be reduced to the sum of $150.00 per month beginning June 21, 1993.
Aggrieved, Barbara has perfected this appeal.

II.
Barbara contends that since Thomas was terminated due to his sexual misconduct, his loss of job was voluntary and does not constitute a material and substantial change in circumstances. Barbara argues that Thomas could not only have prevented the loss of his job, but that he created the circumstances that led to his present financial condition and he cannot now use such a change in circumstances to justify changing or modifying child support payments. She asserts that the court erroneously considered Thomas' personal bills in modifying the support.
First, Barbara relies on Gregg v. Montgomery, 587 So.2d 928 (Miss. 1991), to support her contention that personal bills cannot be used as a factor to reduce support payments.[1] In Gregg, the father, Donnie, argued that he had to pay other bills before making alimony payments to his ex-wife, Charlotte. Id. at 932. This Court found that Donnie failed to offer substantial evidence which was "particular and not general" to support his contention that he was financially *1329 unable to meet his child support obligation. Id. The Court noted that financial hardship was not the sole factor in Donnie's failure to make payments, since Donnie held a "well-paying job" after August of 1986 and did not pay for one-half of the medical expenses from 1986 to 1988 and one-half of private school expenses in 1989 as required by the decree. Id. The Court said "The payment of other debts or expenses will not excuse or justify his default because the alimony payments are paramount.'" Gregg v. Montgomery, 587 So.2d 928 (Miss. 1991) (citing Kincaid v. Kincaid, 213 Miss. 451, 57 So.2d 263 (1952).
The instant case is distinguishable from Gregg. In Gregg, after Donnie's monthly adjusted gross income dropped to $1,213.04 from approximately $1,750 monthly and his former wife remarried, Donnie filed a motion to modify the amount of his child support payment. In the instant case, Thomas filed his motion for modification of child support after he lost his job and had no income. In Gregg, Donnie continued to work and his income steadily rose, yet he failed to pay his child support obligations even during the time that he had a "well-paying job". Id. In the instant case, after Thomas was suspended in December of 1992, he acted in good faith by continuing to pay child support until he was terminated effective March 1993.
Barbara also relies on Mullen v. Mullen, 246 So.2d 923 (Miss. 1971), to support her contention that Thomas should have been required to pay all of the child support since he disposed of his savings and other funds. Barbara contends that the proof in the instant case shows that since December of 1992, Thomas had taken in and disposed of approximately $29,000. She concedes that the best offer of proof as to the disposal of those funds was that he reinvested his retirement account.
In Mullen, the divorced husband, who had been injured in an automobile accident and confined to the hospital for over six months, was found to be in contempt of court for failing to pay child support obligations. Mullen, 246 So.2d at 924. Mullen testified that he could not meet his obligations since he had only been able to secure temporary employment for a short period of time and had been living on loans, donations, and credit. Id. In noting that Mullen received approximately $1,800 or $1,900 from loans and donations, the Court stated that Mullen used general terms and was not specific on how he disposed of the money. Mullen, 246 So.2d at 925. The Court explained that, "The payment of other debts or expenses will not excuse or justify his default, unless such payment was necessary in order to continue his business or occupation, because the wife's right to alimony is a prior and paramount claim on his earning... . [T]he fact that his earnings were insufficient to support himself and pay alimony [will not] exonerate him if he has other money or property which he could sell or encumber to get money with which to make the payments, even though it may be exempt." Id. at 925 quoting Kincaid v. Kincaid, 213 Miss. 451, 57 So.2d 263 (1952). The Court reversed the contempt charges, and upheld the denial of the motion stating that Mullen failed to show that he had performed the terms of the original decree or that its performance has been wholly impossible. Id. at 924-25.
The instant case is distinguishable from Mullen. In Mullen, Mullen testified that he received loans, donations, and money from selling his restaurant, but he made no explanation of how he spent the money  only that he spent it. In the instant case, Thomas clearly explained that he spent the money that he borrowed to repay money into the Mississippi Retirement System. Thomas testified that he used a $10,000 certificate of deposit and $13,000 that he borrowed from Deposit Guaranty to pay monies back into the retirement system. Additionally, Thomas explained that his other savings were spent for legal expenses related to contesting the sexual misconduct alleged against him.
Barbara relies on Tingle v. Tingle, 573 So.2d 1389 (Miss. 1990), and Thigpen v. Kennedy, 238 So.2d 744 (Miss. 1970), to support her contention that the party seeking relief due to financial inability must show "good faith" before the court may grant a modification of the original decree. In Tingle, the parties were awarded a divorce on December 5, 1988. Within six months, Mr. Tingle sought to modify the decree alleging that he *1330 had quit his job and enrolled in an institution of higher learning. Id. The Court, relying on Morris v. Morris, 541 So.2d 1040, 1043 (Miss. 1989), placed great weight on the short lapse of time, between the original decree entered in December 1988 and the attempt to modify the decree six months later. Tingle, 573 So.2d at 1392. The Court found that Mr. Tingle knew or should have known that he would be furthering his education long before the divorce decree was granted in December of 1988. Id.
Thigpen involved a situation where the appellee, Kennedy, wanted to purchase two lots of land. Thigpen, 238 So.2d at 746. However, in order to assure that the property would be clearly separate in view of his impending divorce from his present wife, he conveyed the property to Thigpen, his lady friend. Id. The parties agreed that legal title would be taken in Thigpen's name to hold for him until he could settle his personal matters. Id. After the deed was executed, the parties parted friendship, and Kennedy wanted the property reconveyed, but Thigpen refused. The lower court ordered that she reconvey legal title to Kennedy. On appeal, this Court reversed, finding that the chancellor was manifestly in error in granting Kennedy any relief under the circumstances of the case. Id. at 747. The Court explained that Kennedy's own testimony evidenced that "he did not come into court with clean hands." Id. at 747. Kennedy testified that he conveyed the property to Thigpen only until his divorce was final. Id. He explained that he and Thigpen had unlawfully cohabited together for over four years prior to this transaction and that during this time, they were engaged in the unlawful liquor business. Id. The Court explained that "[a]ny wilful act concerning the cause of action which can be said to transgress equitable standards of conduct is sufficient to invoke the `unclean hands' doctrine." Id.
Barbara's reliance on Tingle and Thigpen is misplaced. First, in Tingle, the Court dealt with time  the date of the original decree and date that the movant attempted to modify the decree, a six month time period. In the instant case, the eight year span from the date of original decree of March 1985 and the attempt to modify the decree date of June 1993, clearly distinguishes this case from Tingle. In Tingle, the former husband voluntarily left his employment in order to enroll in college. In contrast, in the instant case, the former husband was involuntarily terminated from his employment.
Secondly, the factual scenario in the instant case distinguishes it from Thigpen. In Thigpen, the Court addressed a factual scenario which included a land conveyance to a third party. The husband conveyed the property to prevent its distribution during the divorce. In the instant case, the Court addressed the modification of child support upon the movant's termination from his job due to misconduct. Moreover, in the instant case, there is no allegation that Thomas is attempting to hide or to prevent the court or his ex-wife from receiving anything, he only wants them to understand what his current financial situation is and that he is unable to pay. Additionally, there is no allegation that Thomas was terminated or caused himself to be terminated to keep from paying child support.
Finally, Barbara asks this Court to equate Thomas' termination  inducing misconduct with a voluntary quit. At first blush this argument has some appeal. Thomas knew or should have known that he would not be able to continue to meet his obligations, if he committed an act which would lead to his termination from his job. In a word, assuming that the charges were true, it is Thomas' own fault that his income has diminished. Leaving aside the very real question, what quantum of proof is necessary for present purposes to establish the truth of the allegations causing the termination, the essential fact is that the income is gone. The other dispositive fact is that there is no proof that the income was jettisoned in bad faith, that is to avoid the child support obligation. As the court said in Lee v. Lee, 459 N.W.2d 365, 369 (Minn. 1990), "(e)ven assuming the willfulness of relator's on-the-job misconduct (taking one-and-a-half hour lunch hours), there is no authority which equates willful misconduct with voluntary termination where there is no evidence that the misconduct was an attempt to induce termination and thereby avoid a *1331 child support obligation." See also In re the Marriage of Kim Marie Hallada v. Johnson, 1991 WL 162978 1991 Minn.App. Lexis 854 (1991) (unpublished opinion).
"The law is well-settled that, if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support." Willis v. Willis, 109 Or. App. 584, 820 P.2d 858 (Or. 1991) citing Nelson v. Nelson, 225 Or. 257, 260, 357 P.2d 536 (1960); Jones v. Jones, 106 Or. App. 264, 267, 806 P.2d 1170 (1991). "Bad faith" has generally been defined as an obligor's action to reduce income or assets for the purpose of "jeopardizing the interests of his children." Nelson v. Nelson, 225 Or. at 261, 357 P.2d 536; Lee, 459 N.W.2d at 369 ("Whether relator's original earning capacity has subsequently changed is dependent upon whether or not his departure from the employment he held during the marriage and after was in bad faith"). There is neither allegation nor proof of bad faith in the record before us.
The evidence established that Thomas vehemently contested his dismissal and has appealed the decision of the school district with regard to his termination. Thomas has, since his termination, sought other employment pending the outcome of that appeal, having made several applications for jobs within Warren and Sharkey Counties. Thomas testified that since he lost his job, he has had to rely on his current wife, Ruby Parker, for payment of the house note, car notes, and other household expenses. Besides being presently without income, Thomas stated that he doesn't have any other resources from which to satisfy his financial obligations. His savings was depleted due to attorney fees and other expenses incurred as a result of his dismissal from the school.
Other evidence shows that Thomas does have a retirement account with the Mississippi Retirement System, but that he does not have access to those funds. As Thomas explained, he borrowed from his retirement fund several years ago and had to replenish the amount within a certain time period. A person is required to wait a period of time, approximately five years, before he may again borrow from that fund. In replenishing his retirement account, Thomas was forced to borrow money and is still paying notes in the amount of $319 per month for that indebtedness. The chancellor's implicit conclusion that Thomas should not be forced to forfeit his retirement at this juncture is well within his sound discretion and it is not challenged by Mrs. Parker.
The court did not abuse its discretion in modifying the support decree. The judgment of the chancery court is affirmed.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] Barbara erroneously asserts, however, that the court made the finding that Thomas had sufficient assets to maintain support and had not diligently pursued employment. This assertion by Barbara goes beyond the court's findings. At the conclusion of the hearing on the motion, the court stated that it can appreciate the strain and the circumstances that Thomas finds himself in; however, it felt that with Thomas' appearance, education, ability, and general demeanor, there is some work for him, even if it is outside of his field of expertise. (See R. at 55).