## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00305-SCT

*JAMES MOSS YANCEY*

*v.*

*MARY-ANNE DUGUZMAN YANCEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/10/97 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PRENTISS GRANT |
| ATTORNEYS FOR APPELLEE: | WILLIAM R. WRIGHT |
| | STACEY P. STRACENER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 12/16/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 01/06/2000 |

## EN BANC.

## PRATHER, CHIEF JUSTICE, FOR THE COURT:

### INTRODUCTION

¶1. James Moss Yancey, Jr. ("Yancey") appeals a February 10, 1997 order of the Madison County Chancery Court denying the relief sought in his motion to modify his alimony and disability insurance obligations to his former wife and holding him in contempt for not complying with the terms of the September 19, 1994 divorce decree, as well as an additional order entered on September 15, 1995. We affirm the chancellor's ruling on all issues.

### STATEMENT OF THE CASE

¶2. On September 19, 1994, Mary-Anne Yancey ("Mary-Anne") was granted a divorce fro Yancey in the Madison County Chancery Court on grounds of adultery. Yancey was ordered to pay his former wife $450 per month in periodic alimony, as well as $300 per month in child support for the benefit of their minor son, Brian James Yancey. He was further ordered to maintain health and hospital insurance for the child at a cost of $129.77 per month. By order dated September 19, 1995, he was also required to obtain life and disability insurance on himself with the child as beneficiary.

¶3. Yancey filed a Motion for Modification and Contempt on October 28, 1996. He asserted that the diminution in income arising from the loss of his job in May, 1996, as well as his indebtedness to the Internal Revenue Service and the State Tax Commission, amounted to a substantial change in circumstances

warranting a reduction in his monthly support obligations. He further sought to have Mary-Anne held in contempt of court for allegedly refusing to turn over some 700 slides and photographs to him.

¶4. Mary-Anne Yancey filed her "Response to Defendant's Motion for Modification and Contempt and Motion to Hold Defendant in Contempt" on January 29, 1997. She answered in her response that she had complied with the court order. In her own motion for contempt, she asserted that Yancey was $1,940 in arrears in alimony payments, had failed to transfer a $2,000 certificate of deposit to her, had failed to make payments on the parties' van, and had not procured disability insurance as also required by the earlier court orders.

¶5. The chancellor found that all of the necessary slides had been transferred and that Mary-Anne was not in contempt. He did not grant Yancey the relief he sought and instead, found him in contempt for failing to pay alimony and child support and to maintain life and disability insurance. Yancey was ordered to continue child support payments in the amount of $300 per month and $450 per month in alimony payments. He was allowed a prospective credit of $64 per month against the alimony obligation, arising from a loan which the parties made during their marriage to another couple and which, the chancellor determined, was marital property that should have been addressed in the original proceedings. Because of Yancey's dire financial circumstances, the chancellor also suspended the payments on the arrearage owed until for six months until August, 1997[1] and ruled that no interest would be charged on the amounts in arrears. The chancellor found Yancey to be in contempt and awarded Mary-Anne attorney fees on that basis.

¶6. Aggrieved by the chancellor's order, Yancey now asks this Court to consider:

**I. WHETHER THE CHANCELLOR ERRED IN NOT MODIFYING JIM YANCEY'S ALIMONY AND DISABILITY INSURANCE;**

**II. WHETHER THE CHANCELLOR ERRED IN DISMISSING JIM YANCEY'S MOTION TO MODIFY PURSUANT TO RULE 41(B) AT THE CONCLUSION OF HIS CASE;**

**III. WHETHER THE CHANCELLOR ERRED IN HOLDING JIM YANCEY IN CONTEMPT WHEN THE MOTION FOR CONTEMPT WAS NOT PROPERLY NOTICED, NOT TIMELY FILED, NO HEARING WAS HAD ON SAME AND JIM YANCEY WAS NOT PROVIDED THE OPPORTUNITY TO PROVIDE EVIDENCE OF PRESENT INABILITY TO PAY IN DEFENSE TO THE CONTEMPT;**

**IV. WHETHER THE CHANCELLOR ERRED IN HOLDING THAT THE REPAYMENT OF THE LOAN TO MARY ANNE YANCEY BY EVAN AND SHARON HANSON, WHICH WAS NOT DISPOSED OF IN THE ORIGINAL DIVORCE DECREE WAS A MARITAL ASSET WITHOUT PROOF OF SAME;**

**V. WHETHER THE CHANCELLOR ERRED IN REFUSING TO GIVE JIM A RETROSPECTIVE CREDIT FOR LOAN PAYMENTS MARY ANNE RECEIVED (OF WHAT THE CHANCELLOR FOUND TO BE A MARITAL ASSET) AND ONLY ALLOWING A PROSPECTIVE CREDIT; AND**

**VI. WHETHER THE CHANCELLOR ERRED IN AWARDING MARY ANNE ATTORNEY'S FEES WHEN THERE WAS NO HEARING ON HER MOTION FOR**

**CONTEMPT AND NO EVIDENCE OF HER INABILITY TO PAY HER ATTORNEY'S FEES.**

## STATEMENT OF THE FACTS

¶7. James Yancey worked as a children's therapist at Weems Mental Health Center ("Weems") from August, 1994 until April, 1996. After his first year, he received a ten percent raise, earning $26,400 per year or approximately $2,200 per month. Yancey resigned from Weems effective April 30, 1996, due to a disagreement he had with his supervisor. Yancey testified that, since his decision to leave Weems, he had been unable to find other work in his profession. He testified that he had applied for at least sixty positions and had turned down no offers. At the time of the hearing, Yancey referred to a Financial Statement not entered into evidence and stated that he was currently making between $500 and $800 per month, averaging around $650 per month. Yancey testified that his new wife had been ill and was unable to work as the result of complications during her recent pregnancy, and that he would accordingly have to assume a greater share of the household expenses. The record indicates that Yancey had been behind in his alimony since September, 1996, with a total arrearage of over $ 2,900.

## LAW

### I. WHETHER THE CHANCELLOR ERRED IN NOT MODIFYING JIM YANCEY'S ALIMONY AND DISABILITY INSURANCE.

¶8. In his first assignment of error, Jim Yancey contends that the chancellor erred in not modifying either his $450 alimony obligation or the requirement of the divorce decree that he maintain disability insurance coverage. Yancey argues that, absent any evidence that his loss of income was due to bad faith on his part, his departure from Weems and inability to find a new job, along with his new wife's illness and inability to work, constitute material changes in circumstances warranting a reduction in alimony payments. As an aside, he also complains that Mary-Anne is capable of earning enough to support herself and should not expect him to support her while she returned to school.[(2)]

¶9. Alimony and child support obligations are subject to modification only where there has been a material change in the circumstances of one or more of the parties. *Anderson v. Anderson,* 692 So. 2d 65, 70 (Miss. 1997); *Varner v. Varner,* 666 So. 2d 493, 497 (Miss. 1995). The change must be the result of an after-arising circumstance not reasonably anticipated at the time the decree was entered. *Anderson*, 692 So. 2d at 70; *Varner,* 666 So. 2d at 497.

¶10. Contrary to Yancey's arguments, there is no strict rule of law that a modification shall be granted where the payor spouse's reduction in or loss of income is not the result of a bad faith action on his part. Yancey cites *Varner* as helpful authority, but this Court in *Varner* found that the decrease in Dr. Varner's income was due to his voluntary decision to open a solo practice. We accordingly held that there was no change in circumstances warranting a modification of his child support and alimony obligations. *Varner,* 666 So. 2d at 497. Moreover, the discussion of bad faith actions in *Varner* arose in the context of Dr. Varner's bankruptcy filing, rather than in the context of the reduction in income resulting from the changes in his veterinary practice. *Id*. *See also Mullen v. Mullen*, 246 So. 2d 923, 924 (Miss. 1971).

¶11. Yancey also cites *Parker v. Parker*, 645 So.2d 1327 (Miss. 1994), in which this Court did make a finding that no bad faith was shown where the obligor spouse was fired from his teaching job after charges

of misconduct were raised against him. There, this Court rejected the ex-wife's argument that Parker had acted in bad faith by committing an act which would lead him to be fired from his job, finding that there was no evidence of bad faith in the record, and allowed a modification of his child support obligations. *Parker*, 645 So. 2d at 1330-31. While the presence or absence of good faith does constitute a relevant factor in the present context, the absence of bad faith is not dispositive. Instead, Yancey must demonstrate that the chancellor abused his discretion in finding that no material change of circumstances was present in the present case.

¶12. Unlike in *Parker*, Yancey was not fired nor did he present any real evidence that his job was in jeopardy. The record supports the chancellor's finding that Yancey's departure from his job was fully voluntary, and it does appear that a man with Yancey's educational background and professional experience should have been able to secure employment yielding more than $650 to $750 per month. Yancey further contends that his new wife's pregnancy-related illness and her inability to work further qualify as a change in circumstances warranting a reduction in his alimony obligations. He further argues that the fact that Paula Yancey can no longer support him, is, in and of itself, justification for the modification he seeks. However, in *Varner,* this Court expressly rejected the idea that alimony or child support obligations should be reduced because of the obligor's other financial commitments, stating that "[p]ersonal bills cannot be used as a factor to reduce support payments." *Id.* at 497 (citing *Greg v. Montgomery*, 587 So. 2d 928, 932 (Miss. 1991)).

¶13. For these reasons, this Court concludes that the chancellor did not abuse his discretion in failing to find a material change in circumstances, and this point of error is without merit.

> **II. WHETHER THE CHANCELLOR ERRED IN DISMISSING JIM YANCEY'S MOTION TO MODIFY PURSUANT TO RULE 41(B) AT THE CONCLUSION OF HIS CASE.**
>
> **III. WHETHER THE CHANCELLOR ERRED IN HOLDING JIM YANCEY IN CONTEMPT WHEN THE MOTION FOR CONTEMPT WAS NOT PROPERLY NOTICED, NOT TIMELY FILED, NO HEARING WAS HAD ON SAME AND JIM YANCEY WAS NOT PROVIDED THE OPPORTUNITY TO PROVIDE EVIDENCE OF PRESENT INABILITY TO PAY IN DEFENSE TO THE CONTEMPT.**
>
> **VI. WHETHER THE CHANCELLOR ERRED IN AWARDING MARY ANNE ATTORNEY'S FEES WHEN THERE WAS NO HEARING ON HER MOTION FOR CONTEMPT AND NO EVIDENCE OF HER INABILITY TO PAY HER ATTORNEY'S FEES.**

¶14. Yancey next asserts that he was not properly notified of the motion for contempt or provided with an opportunity to defend against the contempt charges with evidence of his inability to pay. The Motion for Contempt was faxed to Yancey's attorney on January 29, 1997, and Yancey contends that notice was given that the contempt issue would be considered at his hearing on the Motion to Modify scheduled for February 4, 1997.

¶15. M.R.C.P. 81(d)(2) provides that actions involving contempt, as well as other domestic matters, shall be triable seven days after the service of process. M.R.C.P. 6(d) further provides that a written motion and notice of the hearing thereon "shall be served no later than five days before the time fixed for the hearing,

unless a different period is fixed by these rules or by order of the court." Yancey, however, did not raise any objections at any time during the proceedings or request a continuance when the chancellor announced that he would consider the motion for contempt and rule upon it. Yancey thereby waived any objection he might have had to not being given timely notice of the hearing.

¶16. Yancey further asserts that he was not given a meaningful opportunity to demonstrate his inability to pay as a defense to the contempt charges. However, the hearing focused on his financial problems, detailing the disparity between his income and his obligations, thus giving him an opportunity to demonstrate a lack of ability to pay. Matters of contempt are within the chancellor's discretion. *Varner*, 666 So.2d at 496.

¶17. Yancey voluntarily quit his job, and he presented no significant evidence that his job was in jeopardy when he left this position. As noted earlier, it is difficult to accept that a man with Yancey's educational background and professional experience has not been able to secure employment yielding any more than $650 to $750 per month . Given that five months elapsed between Yancey's voluntarily quitting his job and filing for modification, this Court cannot say that the chancellor abused his discretion in finding Yancey in contempt. This point of error is without merit.

¶18. Given that this Court has elected to affirm the chancellor's finding of contempt, we also affirm his awarding of attorney's fees. *Johnson v. Johnson*, 650 So. 2d 1281, 1288 (Miss. 1994); *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

### IV. WHETHER THE CHANCELLOR ERRED IN HOLDING THAT THE REPAYMENT OF THE LOAN TO MARY ANNE YANCEY BY EVAN AND SHARON HANSON, WHICH WAS NOT DISPOSED OF IN THE ORIGINAL DIVORCE DECREE WAS A MARITAL ASSET WITHOUT PROOF OF SAME.

¶19. On cross-examination, Mary-Anne testified that she had been receiving monthly payments of $128 on a loan that she and Yancey had made to some friends, Evan and Sharon Hanson, "years ago." She acknowledged that the money came from Yancey's earnings in Saudi Arabia, but "[w]e were married and I decided it was our money." Yancey now contends the chancellor erred in finding that these payments receivable on the Hanson's indebtedness, although not considered during the divorce proceedings, were a marital asset.

¶20. As Mary-Anne Yancey argues, there generally is a presumption that property acquired during the marriage is marital property. *Maslowski v. Maslowski*, 655 So. 2d 18, 20 (Miss. 1995)(citing 1 Ann Oldfather, Janice E. Kosel, et al., *Valuation and Distribution of Marital Property*, § 3.03(4) at 3-37 (1994 ed.)); *Johnson*, 650 So. 2d at 1285; *Hemsley v. Hemsley,* 639 So. 2d 909, 914 (Miss. 1994). Yancey put on no proof that the money lent to the Hansons came from his earnings prior to or outside of the marriage or were otherwise part of his separate estate, nor did his attorney pursue any questioning with Mary-Anne to establish such proof. Only in his brief does Yancey argue that the money came from his earnings *prior* to the marriage. This Court, however, considers only those facts that actually appear in the record and will not rely on mere assertions in briefs. *Touchstone v. Touchstone*, 682 So. 2d 374, 380 (Miss. 1996); *American Fire Protection, Inc. v. Lewis*, 653 So. 2d 1387, 1390 (Miss. 1995). The only evidence presented in the record supports the chancellor's finding that the monies receivable are marital property.

### V. WHETHER THE CHANCELLOR ERRED IN REFUSING TO GIVE JIM A

**RETROSPECTIVE CREDIT FOR LOAN PAYMENTS MARY ANNE RECEIVED (OF WHAT THE CHANCELLOR FOUND TO BE A MARITAL ASSET) AND ONLY ALLOWING A PROSPECTIVE CREDIT.**

¶21. Yancey next asserts that the chancellor erred in not giving him retroactive credit for fifty percent of the loan payments Mary-Anne has received from the Hansons since the time of the divorce and in allowing him only prospective credit for his share. Mary-Anne counters with the argument the issue is procedurally barred because of Yancey's failure to cite any authority. *Grey v. Grey*, 638 So. 2d 488, 491 (Miss. 1994); *Bland v. Bland*, 629 So. 2d 582, 591 (Miss. 1993).

¶22. Procedural bar notwithstanding, the equitable distribution of marital assets is within the discretion of the chancery court. *Arthur v. Arthur,* 691 So. 2d 997, 1002 (Miss. 1997); *Ferguson v. Ferguson*, 639 So. 2d 921, 928, 930 (Miss. 1994). The chancellor's findings will not be reversed unless manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Id.* In this case, the chancellor can not be said to have abused his discretion in allowing Yancey only prospective credit for his share of the amount still owed on the loan to the Hansons. The chancellor expressly found that "I believe that Mrs. Yancey has been relying on that. Mr. Yancey has known about it and the fact that he didn't bring it up, he didn't bring it up to his detriment." Indeed, it would appear that Yancey slept on his rights. The issue of the payments received on the loan was not raised during the divorce proceedings or even in Yancey's Motion for Modification and Contempt.

¶23. Yancey now asserts for the first time that there is no evidence that he knew of the payments, arguing that "[s]urely a man who has lost all of his assets, did not even have a car, had to file bankruptcy and had less than $400.00 a month to live on would have asked for the payments if he had known Mary Anne was receiving them." Contrary to his protestations, it is reasonable to conclude that a man in Yancey's position would have been attempting to identify and secure every possible resource available to help him meet his financial obligations. The chancellor made express finding as to his reasons for not giving Yancey retroactive credit, and the chancellor can not be said to have abused his discretion in so ruling. The chancellor's ruling is affirmed on all issues. Therefore, this Court affirms the judgement of the Madison County Chancery Court.

¶24. **AFFIRMED.**

**PITTMAN, P.J., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶25. I disagree with the chancellor's having found James Yancey in contempt, and, thus, I dissent to the majority's opinion affirming the order of the chancellor in all respects.

¶26. Inability to pay is a defense to a judgment of contempt. *Varner v. Varner,* 666 So. 2d 493, 496 (Miss. 1995); *see also Setser v. Piazza*, 644 So. 2d 1211, 1216 (Miss. 1994)(where a party has filed for modification of his support obligations based on his inability to pay, a finding of contempt is not proper). The burden is on the party in contempt to demonstrate with particularity his inability to pay. *Varner*, 666 So. 2d at 496; *Morreale v. Morreale*, 646 So. 2d 1264, 1267 (Miss. 1994).

¶27. In this case, Yancey filed his motion for modification based on his inability to pay **before** Mary-Anne, as part of her responsive pleadings, filed her motion for contempt. At the hearing, Yancey apparently demonstrated his inability to pay with sufficient particularity because the chancellor recognized his present inability to pay the past due child support and alimony and sought to accommodate him by postponing repayment of the arrearage for six months and not charging him with the interest due. This same evidence of Yancey's financial distress should have been sufficient to support a finding that Yancey was unable to make the payments and, thus, should not be held in contempt.

¶28. Furthermore, the chancellor erred in determining that the loan made to Evan and Sharon Hanson with Yancey's pre-marriage money was a marital asset even though no such determination was made at the time the parties were divorced. Mary-Anne acknowledged that the money came from Yancey's earnings in Saudi Arabia, but she decided that "[w]e were married and I decided it was our money."

¶29. Not only did the chancellor err in finding the loan to be a marital asset, he made matters worse. He failed to allow Yancey any credit for that part of the loan which had already been paid back to Mary-Anne. Yancey should have gotten credit for the $128 Mary-Anne had been receiving in loan payments from the Hansons. This would have reduced significantly the amount of past due alimony Yancey owed to Mary-Anne. While the chancellor did allow Yancey future credit for these payments, Yancey should have been given credit for the already-made payments as well.

¶30. For these reasons, I dissent.

## SULLIVAN, P.J., JOINS THIS OPINION.

1. Subsequent motions filed with this Court indicate that as of September, 1997, Yancey had not resumed his alimony and child support payments or obtained life and disability insurance as required by the lower court's orders. Yancey sought to have the chancellor's February, 1997 judgment stayed pending the appeal.

2. Yancey apparently dropped the assertion raised in his Motion for Modification that his debts to the IRS and the State Tax Commission also warranted a finding that there had been a change in circumstances.