850 So.2d 122 (2002)
Jimmy Earl LANE, Appellant,
v.
Dixie Carole LANE, Appellee.
No. 2000-CA-01554-COA.
Court of Appeals of Mississippi.
May 14, 2002.
*123 Erika Danita Suttlar, Southaven, attorney for appellant.
William R. Striebeck, Greenville, attorney for appellee.
Before McMILLIN, C.J., BRIDGES, and IRVING, JJ.
IRVING, J., for the court.
¶ 1. Jimmy Earl Lane was held in contempt by the Chancery Court of Washington County for failing to pay child support. Additionally, the chancellor determined the arrearage to be $17,150 and entered *124 judgment against him for this amount. He was ordered to pay $5,000 within ninety days or report to jail. Lane has appealed and raises several issues in a convoluted manner. For purposes of our analysis and discussion, we have found it necessary to recast the array of issues into four categories as follows: (1) whether the alimony awarded in the divorce decree was periodic, (2) whether the chancellor's 1998 decisionthat Jimmy voluntarily terminated his employmentwas manifestly wrong, (3) whether the chancellor's 1998 decisionthat the emancipation of two of the parties' childrendid not warrant a reduction in Jimmy's child support obligations, and (4) whether the chancellor manifestly erred in finding Jimmy in contempt and in dismissing, pursuant to the doctrine of unclean hands, his petition for modification.

FACTS
¶ 2. Jimmy and Dixie Lane were divorced June 6, 1988; three children, Heather, Kristie, and Anissa, were born to the marriage. In 1988, Heather was six, Kristie was seventeen, and Anissa was twenty. The final decree ordered Jimmy to pay $400 a month in alimony. In addition, Dixie received full custody of Anissa and Heather; Jimmy received full custody of Kristie. Jimmy was ordered to pay $224 a month per child with a total of $448 a month for child support. Also, upon Anissa's emancipation, Jimmy would pay $400 a month in child support for Heather. Each party was awarded an automobile and Dixie was given the marital home with the responsibility of assuming all payments including taxes. Jimmy was obligated to pay medical, dental, visual, orthodontic, and drug expenses reasonably incurred by the children.
¶ 3. In 1998, Jimmy filed a motion to modify child support and alimony, alleging that he was forced to take an early retirement which caused a reduction of his income. This motion was dismissed on the court's finding that Jimmy voluntarily accepted early retirement thereby reducing his income.[1] In September of 1999, Jimmy was found in contempt for failure to pay child support and alimony arrearage.
¶ 4. In November of 1999, Jimmy filed a petition to suspend and/or modify child support and alimony, waive arrearage, and set aside a contempt order. Dixie objected and responded to the petition with affirmative defenses. In September 2000, the court entered an order of contempt citing Jimmy's failure to pay a $9,350 judgment of past due child support and alimony rendered in September of 1999. Following the September 1999 judgment, Jimmy, without order of the court, discontinued alimony payments and reduced his child support payments to $150 a month. The arrearage caused by this unilateral reduction in payments amounted to $7, 800, and the chancellor also found him in contempt for failing to pay this amount. As a result, the chancellor rendered a total judgment against Jimmy in the amount of $17,150 and ordered him to pay $5,000 of that amount within ninety days or go to jail. Also, the chancellor determined that Jimmy came into court with unclean hands and refused to consider his November 1999 petition for modification. It is from this September 2000 order that Jimmy prosecutes this appeal.

ANALYSIS AND DISCUSSION OF ISSUES
1. Nature of the Alimony
¶ 5. Jimmy contends that the alimony which was awarded in the final decree is *125 periodic alimony, subject to modification. Dixie concedes as much. Periodic alimony is for an indefinite period vesting as it comes due and is modifiable. Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995). The portion of the final decree referring to alimony stated, "[h]usband agrees to pay to wife the sum of $400 per month as alimony, which payments shall commence February 1, 1988 and continue thereafter on the first day of each month." Since Dixie concedes the nature of the alimony, there is no need for us to address this issue any further.
2. Nature of the Termination of Jimmy's Employment and the Reduction in Child Support Obligations because of the Emancipation of One of the Children of the Parties
¶ 6. The matter of the circumstances surrounding and the nature of the termination of Jimmy's employment, as well as the question of whether Jimmy should receive a reduction of his child support obligation because of the emancipation of one of the children, were the subject of Jimmy's 1998 motion for modification. The chancellor ruled adversely to Jimmy on both of these matters, and Jimmy did not appeal. Consequently, those matters are res judicata, and Jimmy is procedurally barred from raising them in this appeal. It is well recognized that appeals not perfected within thirty days will be dismissed. Matter of Estate of Ware, 573 So.2d 773, 775 (Miss.1990). Thus, Jimmy is precluded from raising those issues now.
3. Adjudication of Contempt and Refusal to Consider Jimmy's Petition for Modification
¶ 7. In reviewing a decision by a chancellor, this Court will uphold findings of fact as long as the record reflects that they are supported by substantial, credible evidence. Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss.1991). More importantly, issues of alimony and child support are discretionary, and this Court will not reverse absent a finding that the chancellor abused his discretion or was manifestly in error. Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991).
¶ 8. The chancellor found that Jimmy had failed to pay the $9,350 judgment rendered against him in September 1999, for accrued support and alimony obligations. Also, the court found that he had discontinued alimony and reduced child support payments which resulted in an arrearage of $7,800. The proof is uncontradicted that Jimmy had failed to pay these amounts. His defense was that he was unable to pay because he had suffered a reduction in income.
¶ 9. Further, Jimmy asserts that he had made good faith efforts to uphold his monthly obligations despite his reduction in income to $852 per month. He failed to show with particularity that he was earning all he could, that he lived economically, and paid all surplus money above living expenses to Dixie and Heather. During the hearing, he spoke of his present wife's ailments and his surgeries as factors which required him to accept early retirement. Yet, he did not provide proof with particularity of these surgeries, his wife's sickness, nor testimony of how these factors have hindered him from earning all he could. Regardless, Jimmy's financial obligation to Dixie is paramount to the financial obligations he has as a result of his second marriage.
¶ 10. Moreover, Jimmy did not show that he earned all he could. There was no proof that he had searched for other employment within his town which would supplement his retirement and enable him to pay alimony and child support. Also, Jimmy *126 had purchased a new Dodge pickup truck during the time he was claiming an inability to pay his alimony and child support. Seemingly, he used his surplus from expenses to pay himself instead of Dixie and Heather. Thus, absent Jimmy's showing with particularity that he was earning all that he could, that he lived economically, and paid all surplus to Dixie, we find that the chancellor did not abuse her discretion in determining that Jimmy was in contempt for failing to pay the September 1999 judgment as well as the amounts which came due and payable thereafter. He cannot claim the benefit of a reduction in income because he did not appeal from the chancellor's decision in 1998 that he voluntarily caused a reduction in his income. The record substantially supports the chancellor's decision; therefore, we affirm her finding of contempt.
¶ 11. As stated, the chancellor refused to consider Jimmy's latest motion for modification because she found he had unclean hands. Of course, Jimmy argues that he does not have unclean hands because he first sought a modification of his support obligations back in 1998 after suffering a reduction in income. According to Jimmy, his actions then, which predate his current motion for modification, show that he acted with reasonable promptitude in alerting the court to his inability to pay. The principle of "unclean hands" dictates that "he who comes into equity must come with clean hands." Thigpen v. Kennedy, 238 So.2d 744, 746 (Miss.1970). In O'Neill v. O'Neill, 551 So.2d 228, 233 (Miss.1989), the meaning of this principle was expounded on: "[t]he meaning of this maxim is to declare that no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by wilful inequity...." The court may apply this doctrine sua sponte where it is shown applicable. Brennan v. Brennan, 605 So.2d 749, 752 (Miss.1992).
¶ 12. Jimmy contends that the "unclean hands" doctrine prevents a payor from obtaining a modification if he is in arrears, unless a payor proves his inability to pay. For this reason, Jimmy claims that the doctrine of "unclean hands" does not apply to him because he has shown an inability to pay by filing petitions to modify from 1995 until 2000. In Hooker v. Hooker, 205 So.2d 276, 278 (Miss.1967), the court prescribed that "a husband may not petition for modification of the original decree without a showing either that he has performed it or that his performance has been wholly impossible." The supreme court has recognized that this showing must be done in "particular and not general terms." Gregg v. Montgomery, 587 So.2d 928, 932 (Miss.1991). A husband is required to show what his earnings, his living expenses, and who his dependents are. Kincaid v. Kincaid, 213 Miss. 451, 456, 57 So.2d 263, 265 (1952). Yet, "the payment of other debts or expenses will not excuse or justify his default, unless such payment was necessary in order to continue his business or occupation, because his wife's right to alimony is a prior and paramount claim on his earnings." Gregg, 587 So.2d at 932. Moreover, if a husband wishes to prove an inability to pay, his evidence must show "that he earned all he could, that he lived economically, and paid all surplus money above a living on the alimony decreed to his wife." Kincaid, 213 Miss. at 456, 57 So.2d at 265. Jimmy fails to meet this standard. Therefore, we affirm the chancellor's finding that Jimmy came into court with unclean hands.
¶ 13. Having determined that Jimmy came into court with unclean hands, we now look to see if he left with unclean hands so as to prevent any modification of his support obligations until he had paid all arrearage. Jimmy avers that a change in his alimony and child support payments *127 are warranted because compliance would impose a poverty level of living. Also, he contends that his reduction in income, his poor health, and his wife's failing health were material and/or substantial changes in the circumstances which warrant modification of his alimony and child support obligation. Additionally, Jimmy notes that in 1995[2] the court failed to consider Dixie's additional income and other factors which presented a material change in circumstances. The portion of Jimmy's argument concerning the 1995 hearing will not be addressed because he is precluded from raising that issue in this appeal due to his failure to appeal the chancellor's ruling at that time.
¶ 14. Jimmy properly advances that the chancellor has the power to reduce his alimony and child support when there has been a subsequent and substantial change in circumstances. Gregg, 587 So.2d at 933. However, under these circumstances, Jimmy's hardships are secondary since the chancellor determined that he entered a court of equity with unclean hands. Jimmy's entering with unclean hands does not dictate the conclusion that he left with unclean hands. The chancellor's final order incorporated the court's previous ruling and findings of fact. The entering of this order had the effect of cleansing Jimmy's hands. See Brennan v. Brennan, 605 So.2d 749, 753 (Miss.1992). Therefore, we affirm the judgment of the lower court but hold that the entry of the final judgment cleansed Jimmy's hands and revived the matter of modification. We remand to the lower court for that purpose. On remand, if a modification is granted, it will only be retroactive to the date of the judgment from which this appeal was taken. This Court cannot eviscerate the "bedrock" principle that neither child support nor alimony arrearage can be forgiven. Williams v. Rembert, 654 So.2d 26, 29 (Miss.1995). Thus, we are not at liberty to modify child support retroactively because that would be the equivalent of forgiving Jimmy's obligations. For the reasons stated above, we find that this argument lacks merit, and we affirm the $17,150 judgment rendered against Jimmy as well as the chancellor's finding of contempt. However, the issue of modification is remanded for further action.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF WASHINGTON COUNTY IS AFFIRMED AND REMANDED ON THE ISSUE OF MODIFICATION. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Prior to 1998, several orders for contempt were entered against Jimmy for violating the final decree. As a result, Jimmy was ordered to pay child support and alimony arrearage.
[2] Jimmy filed an Answer to Motion for Citation for Contempt and Counterclaim for Modification in 1995 and stated that Dixie had an increase in income from employment and that she had sold her home and received a large amount of equity from it.