FAIR, J.,
for the Court:
¶ 1. This appeal arises from alimony proceedings between Carl and Joyce Cock- *768 rell. Joyce filed a complaint in the Chancery Court of Oktibbeha County, seeking arrearages of alimony with pre-judgment interest, a finding of contempt, and attorney’s fees. Carl filed a counter-complaint for modification, to eliminate his alimony obligation. The chancellor adjudicated a material change in Carl’s circumstances and ordered a downward modification of alimony. Recognizing Joyce was receiving $557 in Social Security benefits based on Carl’s earnings, the chancellor reduced alimony from $750 to $193 a month. Carl was also ordered to pay the full arrearage of $10,500, with interest at five percent per annum. The chancellor found Carl in civil contempt and liable to Joyce for $2,000 in attorney’s fees. Aggrieved, Joyce asserts: (1) the chancellor erred in finding a material change in circumstances, and, alternatively, (2) the downward modification is barred by the doctrine of res judicata. Finding no error, we affirm the decision of the chancellor.
FACTS
¶ 2. Carl and Joyce divorced in 1989 after thirty-five years of marriage. Joyce was awarded $750 per month in periodic alimony. On November 22, 2004, the chancery court held a hearing on Carl’s petition for modification, reimbursement, and partition of real property. On April 11, 2005, the court issued a judgment dividing the real property and ordering Carl to continue his payment of $750 per month in alimony.
¶ 3. Carl made the periodic alimony payments from 1989 until July 2011, when he became ill. In September 2011, Carl was diagnosed with myelodysplastic syndrome and immediately began chemotherapy. On January 3, 2012, Joyce filed a complaint alleging that Carl had failed to pay alimony from July 2011 through December 2011, for a total arreage of $4,500. Joyce also requested that Carl be held in civil contempt and asked for attorney’s fees with post-judgment interest. Carl responded with a counter-complaint, requesting that the court modify his alimony obligation by terminating his monthly alimony payments. He claimed that his disease constituted a material change in circumstances since the original divorce decree.
¶ 4. The court held a hearing on September 17, 2012. Both Joyce and Carl testified. Joyce testified that she did not work during the marriage, nor had she worked since. She is seventy-seven years old. At some point after the divorce, Joyce began receiving monthly payments based on Carl’s past employment — $557 in Social Security and $449.31 in retirement. With Carl’s alimony payment of $750, Joyce had a total monthly income of $1,756.31. Joyce’s Rule 8.05 financial statement[1] showed that her net monthly expenses totaled $1,710.63. She lives in a mortgage-free home and pays no rent. Joyce claimed that Carl’s failure to pay alimony forced her to borrow $4,000 from friends to pay her bills.
¶ 5. Carl was working at the time of the divorce but retired shortly after. He is now eighty years old and remarried to Sheila Cockrell. They own a home together. Sheila is currently employed as a registered nurse. Carl testified that, until recently, he was healthy and able to make his monthly alimony payment of $750; however, he stopped making his monthly alimony payments in July 2011 because he no longer had the resources to pay. Carl explained that, since his diagnosis, he has used all of his savings for medical expenses. He further testified that he has been unable to work due to his illness.
*769 ¶ 6. At the hearing, Carl presented the court with a copy of his 2010 federal tax return, a Rule 8.05 financial statement, a copy of his medical receipts, and a copy of a medical treatment letter from one of his physicians. His 2010 tax return, filed jointly with Sheila, reflected a combined household adjusted gross income of $73,904. Carl’s Rule 8.05 financial statement showed that he received $689 in monthly retirement and $1,638 in Social Security payments, for a combined income of $2,327. Carl’s Rule 8.05 statement showed that his monthly expenses amounted to $4,074. He also testified that the expenses listed in his Rule 8.05 statement represented the combined expenses of both himself and Sheila and that Sheila contributes to making some of the payments. Carl listed medical expenses of $3,164 from January 29, 2012, to February 28, 2012. He testified that he receives Medicare and other health coverage from his previous employer, which has helped cover some of his costs. Carl also testified that he takes chemotherapy every twenty-eight days. With this treatment, Carl is expected to live an additional four to eight years.
¶ 7. The chancellor found that Carl’s diagnosis and medical expenses, along with Joyce’s receipt of some of his Social Security payments, constituted a material change in circumstances since the original divorce decree. The chancellor then considered the Armstrong[2] factors, comparing the relative positions of Joyce and Carl at the time of the request for modification to their position at the time of the original decree. See Steiner v. Steiner, 788 So.2d 771, 776 (¶ 16) (Miss.2001).
¶ 8. Relying on the supreme court’s decision in Spalding v. Spalding, 691 So.2d 435 (Miss.1997), the chancellor denominated Carl’s Social Security , payments of $557 as income and credited that amount towards his alimony payment. As a result, Carl’s monthly alimony payments were reduced from $750 to $193. The chancellor also held that the modification was not retroactive, ruling that Joyce was entitled to $10,500 in past-due alimony, plus interest. In addition, Carl was held in civil contempt and ordered to pay Joyce’s attorney’s fees.
STANDARD OF REVIEW
¶9. “In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion.” Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous or [applied] an erroneous legal standard[.]” Sanderson v. Sanderson, 824 *770 So.2d 623, 625-26 (¶ 8) (Miss.2002) (citation omitted).
¶ 10. Carl failed to file a responsive brief. See M.R.A.P. 28(c). As such, the appropriate standard of review comes from Chatman v. State, 761 So.2d 851, 854 (¶ 9) (Miss.2000) (internal citation omitted): “An appellee’s failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed.”
DISCUSSION
1. Material Change in Circumstances
¶ 11. Joyce argues that Carl failed to meet his burden of proof to show a material change in circumstances for a modification of alimony.
¶ 12. A payor spouse’s alimony obligation may be modified or even terminated if the spouse is able to show a material change of circumstances has occurred since the original divorce decree. West v. West, 891 So.2d 203, 212 (¶21) (Miss.2004) (citation omitted). However, “the material change must be one that was not reasonably anticipated at the time of the original decree.” Clower v. Clower, 988 So.2d 441, 444 (¶ 7) (Miss.Ct.App.2008) (citing Holcombe v. Holcombe, 813 So.2d 700, 703 (¶ 11) (Miss.2002)). A material change in the income and expenses of both parties should be considered in determining any modification of periodic alimony. Austin v. Austin, 766 So.2d 86, 90 (¶ 19) (Miss.Ct.App.2000) (citing Armstrong, 618 So.2d at 1280).
¶ 13. Joyce claims that Carl failed to meet his burden of proof because he did not provide “relevant documentation or testimony” from his current wife. In granting modification, the chancellor found that Carl’s income had materially changed since the original divorce decree in 1989. Specifically, the chancellor gave great weight to the unforseen diagnosis and medical expenses that began around 2011. At the time of the hearing, Carl was seventy-eight years old. The chancellor determined that both Joyce and Carl had no real earning capacity. Carl’s Rule 8.05 financial statement showed that his monthly expenses were nearly twice his monthly income. The chancellor also recognized that both parties began receiving Carl’s retirement payments and Social Security payments after the original decree. Based on the testimony and documents presented at the hearing, the chancellor determined that Carl’s illness and expenses warranted a modification in alimony. The chancellor’s order reflects that he also considered Joyce’s continued sharing of Social Security and retirement benefits earned by Carl during their marriage. After review, we find that the chancellor’s ruling is supported by substantial evidence in the record. The chancellor did not err in determining that a material change in circumstances existed, warranting downward modification of Carl’s alimony obligations. This issue is without merit.
2. Res Judicata
¶ 14. Joyce insists that, because she received Social Security payments at the time of the 2004 hearing, the downward modification of alimony based on those payments is barred by the principles of res judicata.
¶ 15. In Spalding, our supreme court held that a reduction in alimony may be awarded to the alimony payor when the payee spouse receives Social Security benefits as a result of the payor spouse’s employment history. Spalding, 691 So.2d at 438. The record shows that Joyce began receiving Social Security payments *771 sometime after the divorce. The chancellor determined that Carl’s illness, his medical expenses, and Joyce’s receipt of such payments constituted a material change in circumstances. As a result, he reduced Carl’s monthly payment by $557.
¶ 16. “[C]hancery courts retain continuous jurisdiction over final decrees, providing for alimony, custody of children and child support, and may modify a former decree when the circumstances and conditions have changed after rendition of a former decree. Further, no decree of alimony or child support is ever truly a final judgment, but always subject to modification based upon a material change of circumstances.” Austin v. Austin, 981 So.2d 1000, 1005 (¶ 16) (Miss.Ct.App.2007) (internal citation omitted) (quoting Campbell v. Campbell, 357 So.2d 129, 130 (Miss.1978)). However, “[r]es judicata precludes a party from litigating claims that were raised or could have been raised by the party’s prior ... modification petition.” Howard v. Howard, 968 So.2d 961, 973 (¶ 27) (Miss.Ct.App.2007) (citations omitted).
¶ 17. Joyce argues that, because she had already begun receiving Social Security payments in 2004, res judicata bars consideration of such payments in determining a material change for the purposes of the 2012 order. However, the record contains no evidence that Joyce’s receipt of Social Security benefits was an issue that was litigated or could have been litigated at the 2004 hearing. In fact, there is nothing in the record evidencing her receipt of any benefit in 2004 based on Carl’s Social Security.
¶ 18. Notwithstanding Joyce’s receipt of Social Security payments, if any, Carl’s illness and medical expenses were a material change in circumstances sufficient to justify a downward modification in alimony. It is uncontested that these cited material changes occurred after the original divorce decree and have never been litigated. Accordingly, this issue is without merit.
¶ 19. Joyce also claims that Carl waived any use of his Social Security payments as a credit towards his monthly alimony payments. However, she fails to cite any authority for her position. A party’s “[fjailure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment.” Taylor v. Kennedy, 914 So.2d 1260, 1262 (¶ 4) (Miss.Ct.App.2005). Because Joyce cited no authority to support this argument, it is procedurally barred.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. UCCR8.05.

.The Armstrong factors are:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each-party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).