GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:
¶ 36. I concur with majority's resolution of Issues I and III. However, I disagree with the majority's conclusion upholding the chancellor's denial of Tracy's request to modify his alimony and child support obligations. Therefore, I respectfully dissent.
¶ 37. In Mississippi, it is well established that "[a]limony and child support obligations are subject to modification only where there has been a material change in the circumstances of one or more of the parties." Yancey v. Yancey, 752 So.2d 1006, 1009 (¶ 9) (Miss. 1999). Further, this "change must be the result of an after-arising circumstance not reasonably anticipated at the time the decree was entered." Id. at 1010 (¶ 19). Additionally, "[a] material change in the income and expenses of both parties should be considered in determining any modification of periodic alimony." Cockrell v. Cockrell, 139 So.3d 766, 770 (¶ 12) (Miss. Ct. App. 2014).[12]
¶ 38. At the January 26, 2016 hearing, Tracy contended that a substantial and material change in circumstances had occurred because he had been laid off from his job in the oil industry on August 12, 2015, and Michelle was employed and fully capable of supporting herself. After the hearing, the chancellor issued a "Revised and Amended Opinion of the Court," denying Tracy's request for modification because Tracy had not shown a substantial and material change in circumstances since the divorce decree. The chancellor reasoned that: (1) Tracy's loss of employment was not unanticipated; (2) Tracy used his retirement on other things besides paying his alimony and child support obligations; and (3) Tracy had the ability to procure a business-related loan. The chancellor was manifestly in error in so ruling.
*1202 ¶ 39. The chancellor manifestly erred in three ways. First, at the time of the hearing, Tracy had lost his job and was unable to obtain a job with equal pay. Second, while he may have cashed in his 401k and spent it on things besides his court-ordered obligations, this bears on his contempt and not on whether or not a material change in circumstances occurred. Third, the chancellor's consideration of Tracy's ability to obtain a business loan is inapposite and far too speculative to use as a basis for denying modification.
I. Tracy's Job
¶ 40. In denying Tracy's request for modification, the chancellor noted that Tracy testified that the oil industry "goes up and down" and "people get laid off." Therefore, the chancellor reasoned that Tracy's loss of employment was "not unanticipated" and that Tracy chose not to look for another job in the oil industry. However, the evidence in the record indicates that Tracy established an unanticipated, substantial, and material change in circumstances such that he was entitled to a modification.
¶ 41. Under Mississippi law, a petitioner seeking modification must clearly show "a substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought be modified." Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss. 1992). The supreme court has further explained that this change "must not be one that could have been anticipated by the parties when the chancellor entered the original decree." McEwen v. McEwen , 631 So.2d 821, 823 (Miss. 1994).
¶ 42. At the time of the divorce judgment, Tracy was employed by Weatherford Fishing and Rental, making a gross monthly income of $18,516, with a net monthly income of $13,054. However, at the January 26, 2016 hearing, Tracy testified that he had been laid off from his job at Weatherford in August 2015 because of industry-wide layoffs. He then found employment as a carpenter, making $2,880 a month, netting $2,319. Thus, Tracy's net income had drastically dropped since the divorce decree.
¶ 43. While the chancellor acknowledged in his written opinion that Tracy's financial situation had worsened since the original divorce decree, he reasoned that layoffs were to be expected and Tracy's loss of employment was not unanticipated. However, there is no indication from the record that the parties, at the time of the original decree, contemplated that layoffs would occur.
¶ 44. The chancellor, in finding that Tracy's unemployment was not unanticipated, relied on Tracy's testimony that the oil industry "goes up and down" and that he was not interested in being rehired in the oil industry. However, a review of the record indicates that, while Tracy acknowledged that work in the oil industry fluctuates, he also stated that, as of the time of the modification hearing, "[t]here is no one running at full capacity" and "most [oil companies] are running with a skeleton crew." The chancellor assumed that this showed that Tracy knew that layoffs occurred. It simply does not. It shows that since the time of the divorce decree, employment in the oil industry had declined. There is no indication that, at the time of the original decree, anyone knew or should have known that Tracy would be laid off.
¶ 45. During the modification hearing Tracy also testified that he spoke with friends at three different companies in the oil industry, which did not have work for him. He continued his testimony, explaining that if he was offered a job in the oil field, he would take it and that he "would take an oil field job." Therefore, the chancellor *1203 also erred in finding that Tracy would not take a job, were he offered one in the oil industry.
¶ 46. This is not a case where a husband voluntarily quit his job in bad faith to avoid paying alimony. See Ballard v. Ballard , 843 So.2d 76, 79 (¶ 10) (Miss. Ct. App. 2003) ("[I]f an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support."). Rather, Tracy, after working at Weatherford for many years, lost his job due to circumstances outside his control, and was unable to procure a an equal-paying job. Therefore, he did suffer an unanticipated, substantial, and material change in circumstance. See Parker v. Parker, 645 So.2d 1327, 1328 (Miss. 1994) (granting modification where payor's employment was involuntarily terminated causing him to suffer a loss of income).
II. Tracy's Retirement Account
¶ 47. The chancellor acknowledged that Tracy's income had greatly been reduced since the original divorce decree. However, he reasoned that Tracy was not entitled to a modification because he chose to spend his retirement funds on other things besides his court-ordered obligations. Though bearing on the issue of Tracy's contempt of court, this prior practice of Tracy's does not preclude a finding that Tracy had suffered a material and substantial change in circumstances due to a loss of earnings.
¶ 48. Tracy's use of retirement funds for other obligations was properly considered in finding Tracy in contempt of court, as he did not honor his court-ordered obligations. Evans v. Evans, 75 So.3d 1083, 1087 (¶ 14) (Miss. Ct. App. 2011) ("Failure to comply with a court order is prima facie evidence of contempt."). However, once the chancellor entered a judgment against him, Tracy's hands became clean and his request for modification could properly be heard. See Lane v. Lane, 850 So.2d 122, 127 (¶ 14) (Miss. Ct. App. 2002). Therefore, the chancellor erred in considering such payments in Tracy's request for modification. The chancellor, after entering a judgment of contempt, was to consider whether Tracy, based on his present circumstances, showed that he suffered a substantial and material change in circumstances since the previous divorce decree. There is ample evidence showing that Tracy involuntarily lost his job and was unable to procure an equal-paying job; therefore, he adequately showed a material change in circumstances. To consider the past payments of his other obligations in denying modification of future payments of alimony, when Tracy's income was substantially reduced, was manifest error.
III. Tracy's Poultry Business
¶ 49. The chancellor discusses Tracy's attempt to borrow $1.4 million to construct poultry houses in order to enter the business of raising poultry. It is clear that the chancellor considered this in finding that Tracy did not suffer a material change in circumstances. However, the chancellor was counting the chickens before they hatched. First, Tracy's ability to borrow money for the chicken houses would be a business loan to conduct a business. Second, his income from the prospective business is far too speculative to be considered at the present time.
¶ 50. The chancellor implicitly reasoned that because Tracy could obtain this loan, the loan proceeds should be considered as available for support obligations. This is simply not the case. Tracy testified that in order to begin the chicken business, he had to build four chicken houses. He further explained that the poultry company and a bank were in the process of approving *1204 his loan for the purpose of building these chicken houses and that, in order to qualify for the loan, he had to take out a second mortgage on his home and use his father's land as collateral. He even explained that if not for the land as collateral, he would not have been able to qualify for the loan. Moreover, he testified that this business loan would also be an obligation of his father's. Therefore, the court, in reasoning that Tracy had access to this $1.4 million, clearly misunderstood the impact of these business loans. The chancellor's conclusion that such business loans should be imputed to ability to pay also ignores the effect on the interests of parties that are not present before this court, including his father, the poultry company, and the bank. As such, the ability to obtain such a loan should not be considered in denying his request for modification.
¶ 51. Next, as the majority points out, Tracy's income from the business remained uncertain. Tracy clearly testified that he did not know how much money he was expecting to make nor could he estimate or guess. Therefore, the chancellor ran afoul in considering it. The record lacks any indication whether or not the chicken-house loans would put Tracy in an equal or better financial position. It is simply speculative what will happen in the future and therefore was improperly considered by the chancellor. Hopefully, Tracy's chicken-house business will be successful. This Court has explained that:
[C]hancery courts retain continuous jurisdiction over final decrees providing for alimony, custody of children and child support, and may modify a former decree when the circumstances and conditions have changed after rendition of a former decree. Further, no decree of alimony or child support is ever truly a final judgment, but always subject to modification based upon a material change of circumstances.
Cockrell , 139 So.3d at 771 (¶ 16). Thus, if the poultry business is successful or Tracy's financial situation improves, Michelle may in turn bring such before the court requesting modification.
¶ 52. In summary, the chancellor manifestly erred in denying Tracy's request for modification of the previously ordered child support and alimony. The testimony showed that Tracy had a material change in circumstances when he lost his job and was unable to procure another like-paying job. Tracy had gained employment as a carpenter, but with a reduced income. Further, the chancellor erred in considering Tracy's prior use of his retirement account in determining whether or not a material change in circumstances occurred. Finally, the chancellor erred in considering Tracy's ability to qualify for a business loan and prospective business income when considering whether he suffered a material change in circumstances. Neither the loan nor the business income has any bearing on his present ability to pay and, as such, cannot be considered. The case should be reversed and remanded for the chancellor to set a reduced amount of alimony. For these reasons, I respectfully dissent in part.
IRVING, P.J., WESTBROOKS AND TINDELL, JJ., JOIN THIS OPINION.

One commentator on family law has explained that child support may be reduced when a payor loses income, so long as the income reduction is involuntary, is not foreseeable, and impacts the payor's ability to meet reasonable needs. See Deborah H. Bell, Bell on Mississippi Family Law § 10.11[6][a], at 328 (1st ed. 2005).