McMILLIN, C.J.,
for the court.
¶ 1. This is an appeal from a judgment entered in a post-divorce proceeding in Webster County Chancery Court. John Ballard, as movant in the trial court, sought to modify an existing child support order to lower the amount periodically due. He also sought to modify the child visitation provisions of the divorce judgment. The chancellor ordered some, but not all, of the modifications relating to visitation but declined to modify the child support order. Dissatisfied, Mr. Ballard has appealed, asserting that the chancellor erred in refusing to lower child support and refusing to require his former wife to pay a portion of the travel expenses related to visitation. We find that these determinations were within the realm of discretion given to the chancellor in such matters and, on that basis, we affirm.
I.
Facts
¶ 2. John and Cynthia Ballard were divorced in 1997 on the grounds of irrecon *78 cilable differences. Pursuant to formal agreement between the parties, Mrs; Ballard (now Mrs. Schmitz) was awarded custody of the couple’s only child, Hunter Elizabeth Ballard, subject to visitation rights in favor of Mr. Ballard as set out in the agreement. Mr. Ballard committed to pay $150 per week in child support, and to reimburse Cynthia for medical insurance premium costs. Mrs. Schmitz remarried in 2001 and relocated her residence from Eupora, Mississippi to Brookhaven, Mississippi.
¶ 3. Mr. Ballard subsequently filed a motion to modify the chancellor’s order, alleging that a material change in circumstance had occurred since the entry of the original judgment. In regard to child support, he claimed that his income had been substantially reduced in the aftermath of á leg injury sustained shortly after the divorce. Mr. Ballard requested the court to reduce his weekly support obligation from $150 to a figure more in keeping with his reduced earnings. As to visitation, Mr. Ballard contended that his former wife’s permanent relocation of her residence approximately two hundred miles away created an unanticipated financial hardship on him in exercising his rights of visitation. He sought to have Mrs. Schmitz pay a portion of the resulting travel costs incurred by him.
II.
Modification of Child Support
¶ 4. Mr. Ballard broke his leg in a horse-riding accident shortly after the divorce. The injury required him to be off work for an extended period of time. He testified that, upon returning to his place of employment, he was reassigned to a different job that paid less than the $40,000 annual salary he had been receiving. No evidence was offered as to how much the new position would have paid. Dissatisfied with the situation, Mr. Ballard quit the job and, instead, started his own business as a contractor for home building, remodeling, and repair.
¶ 5. Mr. Ballard testified that, because of generally depressed economic conditions in the area, he experienced difficulty in obtaining sufficient work and his new business was struggling economically. The only concrete evidence of his altered financial condition was a copy of his tax return for calendar year 2000. That document showed gross income of $67,906 and a taxable income of $6,836 after a deduction of $42,154 in self-employment business costs and another $18,916 in various deductions. Mr. Ballard claimed that, in order to meet his child support obligations in the time after his injury, he had incurred almost $30,000 in credit card debt.
¶ 6. Though the hearing was held in September 2001, Mr. Ballard did not present any evidence of his self-employment income for 2001. Neither was there any indication that Mr. Ballard had sought to obtain alternate employment at a compensation level more in keeping with his earning abilities at the time of the divorce except Mr. Ballard’s own unsubstantiated contention that employment opportunities in the area were not good due to generally poor economic conditions.
¶ 7. The chancellor found that there was no basis to reduce child support based on the evidence. The chancellor further reached the conclusion that Mr. Ballard reasonably had the potential to earn a gross income at least equal to the $40,000 he was earning prior to his injury and that to lower child support on those facts would “negate the bargained for additional child support [above that shown due by application of the statutory guidelines] to which the father agreed.” Based on his assumptions regarding Mr. Ballard’s continuing *79 wage earning capabilities, the chancellor found no material change in circumstance other than Mr. Ballard’s own decision to become self-employed. For that reason, the chancellor denied Mr. Ballard’s request to reduce the child support amount.
¶ 8. We do not find reversible error in either the chancellor’s findings of fact nor the subsequent application of the law to those facts. Mr. Ballard had the burden of demonstrating that there has been a material change in circumstance, not anticipated at the time of the original judgment, that would justify a downward modification of his child support obligations. Shaeffer v. Shaeffer, 370 So.2d 240, 242 (Miss.1979). However, this burden is not met by a showing of reduced income when that income was voluntarily chosen. Lahmann v. Hallmon, 722 So.2d 614 (¶ 28) (Miss.1998). The evidence is uncontradict-ed that Mr. Ballard voluntarily left his old employment. His claim of reduced compensation when he returned to work after recovering from his injury consisted solely of his own self-serving testimony. There was no evidence of what his allegedly reduced pay would be nor any plausible explanation as to why he could not return to similar duties at the same compensation level at some other place of employment. Nor was the evidence that Mr. Ballard’s self-employment income was substantially lower than he had earned in the past particularly convincing. For unexplained reasons, he failed to offer any proof as to what his income had been for the eight months immediately preceding the hearing. There was also evidence that Mr. Ballard had acquired horses and a horse trailer during the period in question — a fact that would reasonably cast doubt on his claims of severe financial distress.
¶ 9. The chancellor sits as fact-finder in matters of this sort. Fisher v. Fisher, 771 So.2d 364(¶ 8) (Miss.2000). The findings of fact made by the chancellor, when reviewed on appeal, are entitled to substantial deference based on the fact that the chancellor, hearing the evidence first hand, is best positioned to evaluate the credibility of the various witnesses. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997).
¶ 10. In considering the evidence in that light, we conclude that the chancellor was operating within the range of discretion afforded in such matters when he determined that Mr. Ballard continued to have the ability to earn income substantially equal to what he was earning at the time of the divorce. “The law is well-settled that, if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support.” Parker v. Parker, 645 So.2d 1327, 1331 (Miss.1994).
¶ 11. “ ‘Bad faith’ has generally been defined as an obligor’s action to reduce income or assets for the purpose of ‘jeopardizing the interests of his children.’ ” Parker, 645 So.2d at 1331 (quoting Nelson v. Nelson, 225 Or. 257, 357 P.2d 536, 536 (1960)). We conclude that Mr. Ballard’s decision to decline to pursue other means of earning income that would enable him to meet an obligation to his children at a level that he voluntarily assumed at the time of divorce sufficiently meets the rule announced in Parker as to require us to confirm the chancellor’s ruling.
III.
Travel Expenses
¶ 12. In his second issue, Mr. Ballard asserts that the chancellor erred in refusing his request that Mrs. Schwartz be required to share his travel costs associated with exercising his right of child visitation. Mr. Ballard argues that, because his *80 former wife’s decision to relocate herself and the child to a more distant location was purely voluntary, she should be required to share the added expenses he will incur in exercising visitation. The chancellor found that it was not in the child’s best interest to require the custodial parent to share travel expenses in that manner. However, the chancellor concluded that the change of residence did constitute a material change in circumstance in regard to visitation and allowed Mr. Ballard extended visitation time due to the distance he had to travel to visit his child.
¶ 13. Mr. Ballard contends that separation agreements are “quasi-contractual in nature” and that, because the Ballards’ separation agreement was formed at a time when the parties lived in relative proximity to each other, there was an implied provision that both parties would continue to maintain a residence reasonably close to the other. He argues that Mrs. Schwartz’s action of moving with the child to a more remote destination constitutes a breach of contract, for which a modification to suit the current situation would be appropriate.
¶ 14. We do not find this argument compelling. While some provisions of a divorce agreement have been considered contractual in nature — such as an agreement relating to the division of real property — provisions relating to child support, custody, and visitation remain subject to the chancellor’s authority to modify in the best interest of the child at any time upon a showing of changed circumstances under section 93-5-23 of the Mississippi Code of 1972. Stone v. Stone, 385 So.2d 610, 614 (Miss.1980). Thus, the issue presented by Mr. Ballard is not to be decided on principles of contract, but rather upon more traditional considerations of whether, based upon a showing of material change in circumstance, the proposed change is in the best interest of the child.
¶ 15. The chancellor enjoys substantial discretion in deciding visitation issues, guided essentially by the consideration of what arrangement is in the child’s best interests. Harrell v. Harrell, 231 So.2d 793, 797 (Miss.1970). In this instance, the chancellor found that it was in the child’s best interest to increase her father’s visitation rights, but found that it would not serve her best interests to require the custodial parent to pay a portion of the transportation costs associated with those visits. Such a conclusion finds support in the obvious notion that such a monetary contribution by the custodial parent would necessarily diminish funds available to that parent to provide for the child’s needs. That, alone, would appear to bring the chancellor’s decision within the realm of his discretion on the matter. That seems especially true when, as in this case, there was no evidence that the father’s ability to exercise his visitation rights might be adversely affected by the expense of traveling this extra distance, thereby damaging the parent-child relationship that the law strives to preserve, even in the circumstance of divorce. See, e.g., Cox v. Moulds, 490 So.2d 866, 870 (Miss.1986). When we conclude that the chancellor neither abused his discretion nor was his decision manifestly in error, our duty is to affirm. Martin v. Coop, 693 So.2d 912, 915 (Miss.1997). Finding that to be the situation in the matter now before us, we affirm the chancellor’s decision.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF WEBSTER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P. JJ„ BRIDGES, THOMAS, LEE, MYERS, *81 CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.