# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00609-COA

**CHRISTOPHER DANIEL LEE**                                           **APPELLANT**

**v.**

**NIKKI G. LEE**                                                     **APPELLEE**

DATE OF JUDGMENT:          01/09/2013
TRIAL JUDGE:               HON. E. VINCENT DAVIS
COURT FROM WHICH APPEALED: ADAMS COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:    M. DEVIN WHITT
ATTORNEY FOR APPELLEE:     LISA JENKINS CHANDLER
NATURE OF THE CASE:        CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:   DIVORCE GRANTED ON THE GROUND
                           OF HABITUAL DRUNKENNESS;
                           VISITATION SET
DISPOSITION:               AFFIRMED: 11/25/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., MAXWELL AND FAIR, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Christopher D. Lee appeals the judgment of divorce granted in favor of Nikki G. Lee. He argues that the chancellor erred when he found that there was sufficient evidence to grant Nikki a divorce on the ground of habitual drunkenness, and that Chris was required to pay for transportation costs for visitation. We find no error and affirm.

## FACTS

¶2.     Chris and Nikki met in 2006 and dated for two years. They were married on May 31, 2008. At the time, Nikki worked at Corr-Williams, and Chris worked offshore.

¶3.     Their son, Will, was born on July 31, 2009. Chris had a child from a previous

relationship. Shortly after Will's birth, Chris changed jobs and started work as a contractor for Denbury. This gave him more time at home, even though he still worked seven days on and seven days off.

¶4. On May 3, 2011, Nikki filed a complaint for divorce on the grounds of habitual cruel and inhuman treatment and habitual drunkenness. After the trial, the chancellor granted Nikki a divorce on the ground of habitual drunkenness. The chancellor awarded sole physical custody to Nikki, "reasonable" visitation to Chris, and joint legal custody to both. The chancellor also divided their property. Because of Nikki's planned relocation to Wisconsin once the divorce was final, the responsibility of paying transportation costs for visitation exchanges between Wisconsin and Mississippi fell to Chris. It is from this judgment that Chris now appeals.

## STANDARD OF REVIEW

¶5. The scope of review in domestic cases is limited by the substantial evidence/manifest error rule. *Jundoosing v. Jundoosing*, 826 So. 2d 85, 88 (¶10) (Miss. 2002) (citing *Magee v. Magee*, 661 So. 2d 1117, 1122 (Miss. 1995)). This Court will not disturb a chancellor's findings unless they were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. *Id.* (citing *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994)).

## ANALYSIS

I.   *Whether the chancellor committed manifest error in the grant of a divorce to Nikki on the ground of habitual drunkenness.*

¶6. Chris asserts that it was error for the chancellor to grant Nikki a divorce on the ground

2

of habitual drunkenness. Chris argues that Nikki did not meet her burden in proving habitual drunkenness. Alternatively, Chris argues that Nikki's knowledge of his drinking habits prior to their marriage barred the suit.

### A. Burden of Proof

¶7. On appeal, Chris argues the chancellor erred in finding sufficient grounds for divorce. "A court may grant a divorce on the ground of habitual drunkenness if the plaintiff proves that: (1) the defendant frequently abused alcohol; (2) the alcohol abuse negatively affected the marriage; and (3) the alcohol abuse continued at the time of the trial." *Turner v. Turner*, 73 So. 3d 576, 583 (¶30) (Miss. Ct. App. 2011).

¶8. In *Sproles v. Sproles*, 782 So. 2d 742, 744-45 (¶¶4,7) (Miss. 2001), the court found that the husband's habit of drinking a case of beer each night, which caused him to become abusive and critical, constituted grounds for divorce under habitual drunkenness. On the other hand, in *Culver v. Culver*, 383 So. 2d 817, 817-18 (Miss. 1980), the court found that the husband's habit of drinking four to five beers a night that did not negatively impact the marriage failed to support a divorce under habitual drunkenness.

¶9. At trial, Nikki testified that Chris often made negative comments about her weight. While drunk once, Chris told Nikki that he only finds her attractive and wants to have sex with her when he is intoxicated. On a separate occasion, Chris woke Nikki by urinating on her leg, and, when Nikki protested, Chris started laughing. Chris testified that he had never heard of this incident until trial. On another night, Chris and Nikki got into an argument, and Chris took Will into the house so Nikki could cool off outside. When Nikki decided to go back inside, she found the door locked. After she called Chris and knocked on the door with

3

no answer, she was forced to crawl inside through a back door. She found Chris passed out on their waterbed, with Will face down and wedged between the corner of the bed.

¶10. Nikki testified that Chris often drank five to six beers per day. Chris worked offshore for extended periods of time. When he would return home, he would always have alcohol in his hand. Nikki also testified that on several occasions, Chris would pass out drunk and not remember anything that happened. Finally, Nikki testified that being with Chris after awhile made her depressed, and when they separated, she felt happy again.

¶11. Chris contends that he did not drink as much as Nikki claimed he did. He argues that because Nikki's testimony was not corroborated by any other witness, it is "wildly inconsistent at best." However, Nikki's father, Thomas Godleske, testified that on an ice-fishing trip Chris drank so much that he passed out in a stranger's vehicle. Further, Chris testified that he continued to drink at the time of the trial.

¶12. Where there is conflicting testimony, the chancellor is the trier of fact and adjudicates the credibility of each witness. *Bowen v. Bowen*, 982 So. 2d 385, 395 (¶42) (Miss. 2008). "An appellate court is to affirm findings of fact by chancellors in domestic cases when they are 'supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Robison v. Lanford*, 841 So. 2d 1119, 1122 (¶9) (Miss. 2003) (quoting *Holloman v. Holloman*, 691 So. 2d 897, 898 (Miss. 1996)).

¶13. In review of the record, we find that the chancellor had sufficient evidence to grant Nikki a divorce on the ground of habitual drunkenness: Chris's alcohol consumption, combined with the negative impact it had on the family, and his continued drinking at the

4

time of trial. Additionally, the chancellor, as the trier of fact, was in the best position to determine each witness's credibility and to weight the conflicting testimony. Because the evidence supports the chancellor's findings, we find that he did not commit manifest error in his findings on this issue.

### B. Condonation and Antenuptial Knowledge

¶14. Next, Chris argues that Nikki's condonation of his drinking served as a defense to divorce on the grounds of habitual drunkenness. Chris, in the alternative, contends Nikki knew of Chris's drinking habits before marriage, she married him in spite of this knowledge, and this antenuptial knowledge barred any divorce proceedings on habitual drunkenness. Regardless of these contentions, Chris failed to assert these affirmative defenses in his pleadings or raise them at trial. Therefore, this issue is barred.

¶15. Condonation or antenuptial knowledge, as affirmative defenses, must be specifically pleaded or else the defenses are waived. *Carambat v. Carambat*, 72 So. 3d 505, 511 (¶27) (Miss. 2011) (citing M.R.C.P. 8(c); *Ashburn v. Ashburn*, 970 So. 2d 204, 212 (¶23) (Miss. Ct. App. 2007)). "Affirmative defenses that are neither pled nor tried by consent are deemed waived." *Ashburn*, 970 So. 2d at 212 (¶23) (quoting *Goode v. Village of Woodgreen Homeowners*, 662 So. 2d 1064, 1077 (Miss. 1995)).

¶16. Chris did not raise condonation or antenuptial knowledge as an affirmative defense in his pleadings. However, parties may try an affirmative defense through implied consent. Mississippi Rules of Civil Procedure 15(b) provides:

> When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary

to cause them to conform to the evidence and to raise these issues may be made upon the motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

*See also Lahmann v. Hallmon*, 722 So. 2d 614, 691 (¶15) (Miss. 1998).

¶17. In his order, the chancellor found that Chris had waived the affirmative defense of condonation, because he did not plead it as an affirmative defense. The chancellor ruled: "Chris did not plead condonation as a defense in his pleadings. Therefore, to the extent that Chris may have been attempting to raise a defense of condonation, the Court finds that this defense has been waived." The chancellor did not address a defense of antenuptial knowledge or if the parties tried condonation by express or implied consent.

¶18. From the record, there is no indication the parties agreed to try condonation or antenuptial knowledge by express consent. Therefore, the question remains whether the parties tried the issue through implied consent. While issues not raised in the pleadings may be tried by implied consent, the party relying on implied consent for an issue must demonstrate certain requirements.

¶19. First, in order to find the parties tried the issue by implied consent, this Court must determine if the parties knew "'that a new issue was being litigated at trial.'" *Mabus v. Mabus*, 890 So. 2d 806, 814 (¶32) (Miss. 2003) (quoting *Setser v. Piazza*, 644 So. 2d 1211, 1217 (Miss. 1994)). Further, this Court will not find implied consent "where the 'questions asked or the evidence presented at trial are relevant to the issues actually raised in the pleadings.'" *Id.* (citation omitted).

¶20. At trial, the following cross-examination of Nikki occurred:

Q: Yeah. Those two years before you got married y'all had, you and Chris

6

had a good relationship?  Did he drink back then?

A:     Yes.

Q:     He did?

A:     Yes.

Q:     Did he drink a lot back then?

A:     Yes.

Q:     Did he drink basically the same amount you've testified he drinks to now?

A:     Yes.

Q:     And you still married him with that?

A:     Yes.

. . . .

Q:     Before you got married[,] Chris'[s] behavior was pretty much the same as you've testified today as during the marriage.  It was the same behavior prior to the marriage?  I'm talking about going down to his parents' house and going to a friend's house or something like that and drinking?

A:     Yes.

Q:     He hasn't changed, has he?

A:     No.

In response to her cross-examination, Nikki did not make any objections to this line of questioning.

¶21.   Here, the record fails to demonstrate that both parties knew Chris asserted the defense of condonation or antenuptial knowledge during trial.  As Nikki's testimony illustrated, she

knew of Chris's habitual drunkenness prior to their marriage, but decided to go forth with the marriage anyway. However, Nikki's testimony regarding Chris's drinking habits served as relevant evidence for the asserted ground for divorce. The line of questioning about Chris's habitual drunkenness did not place Nikki on notice of any defense and directly related to the alleged ground for divorce. Because Chris failed to properly raise any defense of condonation or antenuptial knowledge, either through his pleadings or consent at trial, this issue has no merit.

> II. *Whether the chancellor committed manifest error in requiring Chris to bear the burden of all transportation costs in exercising his visitation rights.*

¶22. In his second issue on appeal, Chris argues the chancellor erred by placing the entire burden of transportation costs for his visitation on him rather than dividing the costs. Chris asserts that Nikki agreed in court to share the transportation costs and the best interests of the child necessitate the division of costs. Nikki counters that Chris failed to raise the issue at trial and the chancellor did not abuse his discretion in requiring Chris to bear the costs of his visitation.

¶23. This Court cannot review an issue on appeal if the parties failed to present the issue to the chancellor at trial. *In re Dissolution of Marriage of De St. Germain*, 977 So. 2d 412, 418 (¶19) (Miss. Ct. App. 2008) (citing *Birrages v. Ill. Cent. R.R.*, 950 So. 2d 188, 194 (¶18) (Miss. Ct. App. 2006)). However, an appellant may preserve an issue outside of the pleadings, transcripts, or rulings for appeal if he raised the issue in a motion for a new trial. *Moore v. State*, 131 So. 3d 1228, 1231 (¶7) (Miss. App. Ct. 2013).

¶24. While the issue of costs for visitation if Nikki gained primary physical custody of Will

and relocated to Wisconsin arose through Nikki's testimony, Chris did not address the issue at trial. Chris, however, argued against the chancellor's ruling regarding transportation costs in his motion to reconsider, which the chancellor treated as a motion for a new trial. The chancellor subsequently denied Chris's motion.

¶25. When a chancellor denies a motion for a new trial, this Court shall reverse the decision only if the chancellor committed an abuse of discretion. *Smith v. Crawford,* 937 So. 2d 446, 447 (¶5) (Miss. 2006) (citations omitted).

¶26. The chancellor applied the proper legal analysis in determining that under Mississippi Rule of Civil Procedure 59, Chris failed to demonstrate a basis for a new trial. Additionally, the chancellor evaluated the motion under Mississippi Rule of Civil Procedure 60, in the event Chris intended to seek relief under this rule, and found no merit to the motion under that rule as well. Therefore, the chancellor did not abuse his discretion.

¶27. Even if Chris successfully raised the issue of the burden of transportation costs on appeal, "[t]he chancellor enjoys substantial discretion in deciding visitation issues, guided essentially by the consideration of what arrangement is in the child's best interests." *Ballard v. Ballard*, 843 So. 2d 76, 80 (¶15) (Miss. Ct. App. 2003) (citing *Harrell v. Harrell*, 231 So. 2d 793, 797 (Miss. 1970)). While Mississippi law does not mandate the noncustodial parent bear the burden of transportation costs, a relocation by the custodial parent does not require a division of costs. *Id. Ballard* is instructive for this case.

¶28. In *Ballard*, the noncustodial father sought a modification of the child-visitation arrangements regarding travel costs to exercise his visitation rights. *Id.* at (¶3). After the mother and child relocated across the state, the father argued the voluntary relocation by the

mother required her to bear a portion of the costs incurred by the father. *Id.* While the chancellor awarded the father liberal visitation rights, the chancellor also found that compelling the mother to bear any of the transportation costs would not support the best interests of the child. *Id.* at (¶12). In affirming the decision, this Court determined the chancellor did not abuse his discretion and that any contribution to transportation expenses by the mother would detract from her financial support of the child. *Id.* at (¶15).

¶29. Also, the Court alluded to the possibility that if the father showed that the expense of additional travel would prevent the exercise of his visitation, then a modification could occur. *Id.* However, the father in *Ballard*, just as Chris in this case, failed to demonstrate that the costs of transportation would adversely affect his visitation rights. *Id.* Chris claims that in order to exercise his rights, he would have to spend four days and over $1,000 each visitation period for travel. While Chris explains his commercial driver's license limits the number of hours he can drive each day, which would potentially extend travel time to and from Wisconsin to four days, he does not show how each visit would cost $1,000. Additionally, Chris fails to show how these costs would substantially burden or preclude his visitation or would go against the best interests of the child.

¶30. Because the chancellor did not abuse his discretion in denying Chris's motion for a new trial, and Chris failed to prove the transportation costs placed an unfair burden on the exercise of his visitation rights, we affirm.

¶31. **THE JUDGMENT OF THE CHANCERY COURT OF ADAMS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON,

**MAXWELL, FAIR AND JAMES, JJ., CONCUR.**