# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00112-COA

**LADONNA WARE**                                                          **APPELLANT**

**v.**

**ADAMS COUNTY, MISSISSIPPI, BY AND**                          **APPELLEES**
**THROUGH ITS BOARD OF SUPERVISORS,**
**AND ADAMS COUNTY SHERIFF CHARLES R.**
**MAYFIELD JR., IN HIS OFFICIAL CAPACITY**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2014 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LADONNA WARE (PRO SE) |
| ATTORNEYS FOR APPELLEES: | WILLIAM ROBERT ALLEN |
| | JOHN CHADWICK WILLIAMS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED IN FAVOR OF APPELLEES |
| DISPOSITION: | AFFIRMED - 08/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., JAMES AND WILSON, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     LaDonna Ware appeals the judgment of the Circuit Court of Adams County, which granted summary judgment in favor of Adams County and Adams County Sheriff Charles R. Mayfield Jr.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 11, 2010, Ware went to Adams County Correctional Center (Correctional Center) in Natchez, Mississippi, to take her ex-husband a few items.  The Correctional

Center allowed inmates to receive certain items, but they had to be checked by staff to ensure that there was no contraband. For security purposes, the Correctional Center required each individual bringing items to go into a small room that had locking gates on either end of the room. An officer, located in the control tower adjacent to the room, would flip a control switch that closed a gate behind the entering individual, securing the visitor in the room. The individual would place the packaged item in a drawer that slid between the secure room and the control tower. The officer would then pull the package through to the control tower and inspect it. Once the package was inspected, the individual was allowed to exit the room.

¶3.     Ware entered the secure area and successfully delivered the package for her ex-husband and left the room. According to Ware, she was told to return to the secure area. Ware was then told that she could leave the area, and the gate made a noise as she made her way through. Before Ware completely got through the gate, it closed on the lower part of her body.

¶4.     Deputy Fran Christie testified that a group of people were asked to return to the secure area, and Ware was a part of that group. According to Deputy Christie, once the group was in the secure area, she asked for packages and learned that Ware had already delivered hers. The officer opened the gate for Ware to exit. As the gate opened, it "hung up," and although Deputy Christie could see that Ware's upper body had cleared the gate, she could not see that one of her legs had not. Deputy Christie flipped the switch to get the gate to function and the gate closed on Ware's lower leg, which had not cleared the gate. Deputy Christie stopped the gate before it closed completely, and the gate reset and reopened.

## PROCEDURAL HISTORY

¶5.    On November 10, 2011, Ware filed a complaint alleging that Sheriff Mayfield[1] and Adams County (collectively, "the County") were responsible for her personal injury because they had a duty: (1) of ordinary care not to create a dangerous condition in operating the sally port gate with negligence and recklessness; and (2) to properly train all their employees to prevent such dangerous conditions.  On December, 19, 2013, the County filed its motion for summary judgment arguing that Ware's claims were barred pursuant to the Mississippi Torts Claim Act (MCTA).

¶6.    On August 25, 2014, the trial court held a hearing on the County's motion for summary judgment.  The trial court subsequently granted the County's motion, finding that there was no genuine issue of material fact regarding whether Deputy Christie's opening of the sally port gate fell below the threshold of reckless disregard.  On September 3, 2014, Ware filed a pro se motion for reconsideration, which the trial court denied.  Ware now appeals.

## STANDARD OF REVIEW

¶7.    We review the circuit court's grant or denial of summary judgment de novo.  *Harris ex rel. Harris v. Bd. of Trs. of Clinton Pub. Sch. Dist.*, 126 So. 3d 100, 103 (¶9) (Miss. Ct. App. 2013).  The moving party bears the  burden of proving that no genuine issue of material fact exists, and we give the non-moving party the benefit of the doubt concerning the existence of a material fact.  *Howard v. City of Biloxi*, 943 So. 2d 751, 754 (¶4) (Miss. Ct.

---

[1] Sheriff Mayfield was sued only in his official capacity.

3

App. 2006).

**DISCUSSION**

¶8. Ware raises several issues on appeal, but we have combined the issues and discussed them under the general issue of whether the trial court erred in granting the County's motion for summary judgment.

> **I. Whether Adams County had a duty to warn of a dangerous condition.**

¶9. First, Ware asserts that pursuant to Mississippi Code Annotated sections 11-46-9 (1)(v) and 11-46-9(1)(w) (Rev. 2012), the trial court erred in granting summary judgment because the County had knowledge of a dangerous condition. This Court, however, cannot review an argument on appeal if Ware failed to present the argument to the circuit court. *See Lee v. Lee*, 154 So. 3d 904, 909 (¶23) (Miss. Ct. App. 2014). Ware did not argue before the trial court that the County was liable for failure to warn of a dangerous condition. Because Ware failed to raise this allegation before the circuit court, she is procedurally barred from raising it for the first time on appeal. *In re Dissolution of Marriage of De St. Germain*, 977 So. 2d 412, 419 (¶19) (Miss. Ct. App. 2008).

¶10. Notwithstanding the procedural bar, we will briefly address the merits of Ware's claim. Ware essentially argues that under sections 11-46-9(1)(v) and (w), the County had a duty to warn that the gate was faulty. Ware reasons that immunity should not apply because the County failed to warn her of this danger. Sections 11-46-9(1)(v) and (w) state as follows:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

4

. . . .

(v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care; [or]

(w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice[.]

Ware did not provide any proof of a dangerous condition or the County's failure to warn her of one. There was no proof of any recent malfunctioning of the gate to put the County on notice of a dangerous condition. This assignment is meritless.

**II.    Whether the trial court erred in finding that there was no genuine issue of material fact as to whether Deputy Christie acted with reckless disregard.**

¶11.    Ware also asserts that the trial court erred in determining that Deputy Christie's actions fell below the threshold of reckless disregard. The trial court found that the County was immune from liability pursuant to Mississippi Code Annotated section 11-46-9(1)(c) (Rev. 2012). Section 11-46-9(1)(c) provides immunity for "claims [a]rising out of the acts by its employees engaged in the performance of duties relating to police protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." *City of Jackson v. Gardner*, 108 So. 3d 927, 928-29 (¶5) (Miss. 2013). Under section 11-46-9(1)(c), Ware "has the burden of proving reckless

5

disregard by a preponderance of the evidence." *Morton v. City of Shelby*, 984 So. 2d 323, 330 (¶17) (Miss. Ct. App. 2007).

¶12. It is undisputed that Deputy Christie was acting within the course and scope of her employment with the Adams County Correctional Center at the time that the incident occurred. Thus, Ware was required to make a sufficient evidentiary showing of reckless disregard. *Id*. The Mississippi Supreme Court has held that an act in "'reckless disregard' exceeds gross negligence and embraces willful and wanton conduct." *Gardner*, 108 So. 3d at 929 (¶6). "Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Johnson v. City of Quitman*, 66 So. 3d 1261, 1264 (¶6) (Miss. Ct. App. 2011). Liability under the MCTA is not incurred for mere negligence, but only for reckless acts. *Maldonado v. Kelley*, 768 So. 2d 906, 909 (¶6) (Miss. 2000).

¶13. In *Johnson*, officers responded to a disturbance call at a woman's home, but did not arrest her ex-husband. *Id*. At 1263 (¶3). When officers arrived at the home, the ex-husband was standing outside of the house making threats. *Id*. The officers ordered him to leave and one officer stayed at the house until the ex-husband left. *Id*. The ex-husband returned a few days later, beat Johnson, and stabbed her with a knife. *Id*. In affirming the trial court's dismissal, we agreed that the evidence presented did not suggest that the officers intended for harm to follow their decision not to arrest the ex-husband. *Id*. at 1264 (¶8). Thus, there was no evidence that the officers' conduct was willful or wanton. *Id*. We determined that there was no genuine issue of material fact as to whether the officer had acted in reckless

6

disregard, and the city was immune from liability. *Id.*

¶14. Likewise, in *Joseph v. City of Moss Point*, 856 So. 2d 548, 551 (¶9) (Miss. Ct. App. 2003), we held that there was not genuine issue of material fact to suggest that an officer who had accidentally rear-ended Joseph acted in reckless disregard. We explained that the officer was careless in paying attention to the traffic directly in his lane but his reaction in prematurely moving forward was more of a reflex in response to him seeing traffic move in the lane beside him. *Id.* We found that the officer's action was careless rather than a blatant exhibition of recklessness. *Id.* Thus, the city and the officer were entitled to immunity under the MCTA. *Id.*

¶15. In the present case, there is no genuine issue of material fact to suggest that Deputy Christie acted in reckless disregard of Ware's safety and well-being. When the gate jammed, Deputy Christie attempted to reset the gate. Before Deputy Christie reset the gate, she looked and saw through the control tower window that Ware's upper body was through the gate. Deputy Christie did not see that Ware's leg had not cleared the gate when she reset it. There is no evidence that Deputy Christie intended to close the gate on Ware. To the contrary, the evidence demonstrates that Deputy Christie accidentally closed Ware's leg in the gate when she tried to reset it.

¶16. As the trial court judge found, Deputy Christie's conduct did not constitute reckless disregard. Ware has presented no evidence suggesting that Deputy Christie intended for harm to follow her decision to reset the gate. Therefore, we find that the County was entitled to immunity under the MTCA. This issue is without merit.

7

## CONCLUSION

¶17. We find that the trial court was correct in finding that there was no genuine issue as to whether the immunity found in section 11-46-9-(1)(c) applied to the County. Accordingly, we affirm the trial court's judgment.

¶18. **THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., AND ISHEE, J., CONCUR. BARNES, FAIR AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON AND GREENLEE, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**