# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00649-COA

IN RE THE CONSERVATORSHIP OF WILLIE E. MAYBERRY: LISA MAYBERRY-JOHNSON     APPELLANT

v.

MATTIE MAYBERRY     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/17/2024 |
| TRIAL JUDGE: | HON. GEORGE WARD |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | T. JACKSON LYONS |
| ATTORNEY FOR APPELLEE: | SCOTT FLETCHER SLOVER |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 11/18/2025 |
| MOTION FOR REHEARING FILED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND WEDDLE, JJ.

### WEDDLE, J., FOR THE COURT:

¶1. Mattie Mayberry filed a petition in the Adams County Chancery Court seeking to be appointed as guardian and conservator of her husband, Willie Mayberry, and Willie's estate. The couple's daughter, Lisa Mayberry-Johnson, objected to Mattie's petition, and Willie's brother and sister, Murphy and Minnie Mayberry, joined Lisa's objection. After a hearing, the chancellor entered a judgment granting Mattie's petition and appointing her as Willie's guardian and conservator. On appeal, Lisa argues that the chancellor lacked substantial credible evidence to support his judgment and that he erred as a matter of law by appointing Mattie. Because we find no abuse of discretion or clear error, we affirm the chancellor's judgment.

## FACTS

¶2. After Mattie filed her petition in chancery court seeking to be appointed as guardian and conservator over Willie and his estate, Lisa, Murphy, and Minnie filed an objection to the petition. Although the objectors agreed that Willie's deteriorating health required the appointment of a guardian and conservator, the objectors disagreed that Mattie should be the person appointed to fill those roles. In light of the parties' filings and conflicting viewpoints, the chancellor appointed a guardian ad litem (GAL) to represent Willie's best interests.

¶3. During the subsequent hearing, the parties stipulated that Willie needed a guardian and conservator due to his advanced Alzheimer's disease. Mattie testified that she and Willie had been married for fifty-two years and that they currently resided in Natchez, Mississippi. Mattie stated that in 2016, she and Willie traveled to California to stay with Lisa while Willie participated in a medical trial for Alzheimer's patients. During the couple's stay in California, Mattie and Willie both executed a power of attorney and an advanced healthcare directive. The powers of attorney gave Lisa the ability to manage her parents' affairs in an emergency. Mattie testified that although she continued to serve as Willie's primary caretaker while the couple lived in California, she and Lisa began to have numerous disagreements. As a result of the ongoing disagreements, Mattie decided to return to Natchez.

¶4. In 2019, Mattie and Willie returned to their home in Natchez. Pursuant to the documents Willie had signed while in California, Lisa began to manage her father's financial and medical affairs. Lisa and Mattie's disagreements over Willie's care continued and

2

worsened as Lisa managed Willie's finances and treatment from California.

¶5. Mattie testified that with the help of sitters, she provided daily at-home care for Willie. Mattie stated that she helped bathe Willie, fix his meals and snacks, prepare his medication, and check on him throughout the day and night. Mattie testified that she wished to be Willie's guardian and conservator not only to have more control over what occurred in her own home but also because she was with Willie every day. Mattie expressed her belief that she was the person best situated to understand what was going on with Willie and that Willie would want to remain at their home to receive care. Mattie testified that if the chancellor appointed her as Willie's guardian and conservator, she would allow Lisa, Murphy, and Minnie to enter the couple's home and visit Willie.

¶6. Like Lisa, Murphy and Minnie both had difficult relationships with Mattie. As a result, despite the fact that the siblings lived close to Willie, they rarely visited their brother at his home. Even so, Murphy corroborated Mattie's statements that Willie would want to remain in his own home rather than be moved to a care facility. Based on his belief that Willie would wish to remain at home, Murphy testified that he also wanted that for Willie. Murphy agreed that he had no reason to question or doubt the quality of the at-home care that Willie was currently receiving. Murphy also testified that as long as matters could be worked out to allow him to visit Willie, he did not see a problem with the chancellor allowing Willie to remain at home with Mattie.

¶7. Like Murphy, Minnie testified that Willie would wish to remain at home rather than be relocated to a care facility. Minnie stated that she no longer had a good relationship with

3

Mattie, and as a result, she had not seen Willie in almost two years. Because of this lengthy separation, Minnie could not provide any firsthand testimony about the quality of the at-home care Willie received. Although Minnie acknowledged that Willie would wish to remain at home, she stated that she still thought it would be in Willie's best interest to be moved to a care facility. Due to Mattie's strained relationships with other family members, Minnie did not believe the chancellor should appoint Mattie as Willie's conservator.

¶8. Lisa testified remotely from her home in California. Lisa stated that she had handled her father's medical and financial affairs for the past few years pursuant to the power of attorney and advanced healthcare directive he had executed. Lisa testified that she would like to relocate her father to her home in California, where she could more easily care for him. If Willie remained in Natchez, Lisa testified that she thought he should be relocated to a care facility and that Minnie should be appointed as his conservator. Lisa acknowledged that she and Mattie had a difficult relationship, and she stated that she did not believe Mattie should be appointed Willie's conservator.

¶9. The court-appointed GAL described Mattie and Willie's home as "nice[,] clean, [and] welcoming." The GAL stated that she observed no signs of neglect and that Willie appeared to be clean and well fed. The GAL found, however, that Lisa and Mattie's relationship appeared to be "severely damaged, possibly beyond repair." Due to this rift, the GAL recommended that the chancellor appoint a third party to serve as Willie's conservator. Because Mattie had a volatile relationship not only with Lisa but also with Minnie and Murphy, the GAL recommended that the chancellor appoint the chancery court clerk, rather

4

than a family member, to be Willie's conservator. The GAL also recommended that the chancellor move Willie to a local care facility where all his family members could more easily visit him.

¶10. After considering the testimony presented at the hearing, the chancellor found that clear and convincing proof showed Willie required complete care over both his person and his estate. The chancellor also found "[t]he testimony was conclusive that [Willie] will best be served by remaining in his own home." In addition, despite the objectors' difficult relationships with Mattie, the chancellor determined that there had been "no evidence of abuse or neglect of Willie by Mattie." The chancellor concluded that Willie should continue to receive at-home care and that Mattie was best situated to make decisions about Willie's finances and medical care. The chancellor therefore entered a judgment revoking Willie's previously executed power of attorney and advanced healthcare directive and granting Mattie's petition to be appointed as Willie's guardian and conservator. Aggrieved by the chancellor's judgment, Lisa appeals.

## STANDARD OF REVIEW

¶11. "We will not reverse a chancellor's findings of fact or discretionary rulings unless the chancellor abused his discretion, committed a manifest or clear error, or applied the wrong legal standard. We review issues of law de novo." *Mask v. Baggett*, 411 So. 3d 277, 281 (¶14) (Miss. Ct. App. 2025) (citation and internal quotation mark omitted).

## DISCUSSION

I. **Sufficient credible evidence supported the chancellor's determination.**

5

¶12. On appeal, Lisa argues that no substantial credible evidence supported the chancellor's findings that Willie's best interest would be served by remaining in his own home with Mattie as his conservator and guardian. In discussing a chancellor's authority to appoint a conservator, Mississippi Code Annotated section 93-20-410(1)-(2) (Rev. 2020) provides the following:

(1) Appointment of a conservator is at the discretion of the court, and in the best interest of the respondent. If two (2) or more persons have requested responsibility as conservator, the court shall select as conservator the person the court considers best qualified. In determining the best qualified person, the court shall consider the person's relationship with the respondent, the person's skills, the expressed wishes of the respondent including any designation made in a will, durable power of attorney, or health-care directive, the extent to which the person and the respondent have similar values and preferences, and the likelihood the person will be able to perform the duties of a conservator successfully. The court, acting in the best interest of the respondent, may decline to appoint as conservator a person requesting the appointment.

(2) If a qualified conservator cannot be determined, the court, in its discretion, may appoint the chancery court clerk or probate administrator for the county in which the proceedings were filed to serve as the respondent's conservator. . . .

With regard to a chancellor's discretion to appoint a guardian, the language contained in Mississippi Code Annotated section 93-20-308(1)-(2) (Rev. 2020) is substantially the same as that provided in section 93-20-410 for the appointment of a conservator.[1]

---

[1] Section 93-20-308(1)-(2) states the following:

(1) Appointment of a guardian for an adult will be at the discretion of the court and in the best interest of the respondent. If two (2) or more persons have requested responsibility as guardian for the adult, the court shall select as guardian the person the court considers best qualified. In determining the best qualified person, the court shall

6

¶13. Here, the chancellor considered the parties' differing proposals about the appointment of a guardian and conservator for Willie. As discussed, Mattie requested that the chancellor appoint her, and Lisa vehemently objected to the request. In determining that Mattie was best qualified to serve as Willie's conservator and guardian, the chancellor highlighted that Mattie had been married to Willie for over fifty years and that the couple had known each other even longer. The chancellor noted there was no dispute that Willie needed a conservator and guardian due to the advanced stage of his Alzheimer's disease. Despite the ongoing tension Mattie had with Murphy and Minnie, all three testified that Willie would wish to continue receiving care in his home rather than being relocated to a care facility.

¶14. Although Lisa had been managing Willie's financial and medical affairs from California, the chancellor found the arrangement was problematic because Lisa often made decisions without consulting or communicating with Mattie as the hostilities between the two women continued. Mattie testified that unlike Murphy, Minnie, and Lisa, she was with Willie on a daily basis and was best situated to know what was going on with his condition.

consider the person's relationship with the respondent, the person's skills, the expressed wishes of the respondent, including any designation made in a will, durable power of attorney, or health-care directive, the extent to which the person and the respondent have similar values and preferences, and the likelihood the person will be able to perform the duties of a guardian successfully. The court, acting in the best interest of the respondent, may decline to appoint as guardian a person requesting such an appointment.

(2) If a qualified guardian under this section cannot be determined, or if other circumstances arise where the court determines that a guardian must instead be appointed, the court, at its discretion, may appoint the chancery court clerk for the county in which the proceedings were filed, to serve as the respondent's guardian.

7

Mattie stated that she already helped take care of Willie in several ways, including bathing him, preparing his food, and dispensing his medication.

¶15. Indeed, the chancellor found that Mattie had been successfully providing at-home care to Willie with the assistance of sitters and that she "ha[d] continued to care for Willie in their home for the last two years despite [the] objection to her petition" to be appointed as his guardian and conservator. The chancellor also found that no proof had been offered to cast doubt on Mattie's ability to continue caring for Willie, discredit the quality of care Mattie had helped to provide to Willie, or demonstrate that Mattie had abused or neglected Willie. Moreover, the chancellor noted that the GAL had found no signs of neglect when she visited Willie and Mattie's home. Rather, the GAL had described the couple's home as welcoming and had found that Willie appeared to be clean and well fed.

¶16. On appeal, Lisa challenges the chancellor's finding that she failed to prove Mattie ever neglected or abused Willie. Lisa points to several places in her trial testimony where she mentioned various incidents that had occurred. Lisa argues these events constituted neglect by Mattie.

¶17. The record clearly documented Mattie and Lisa's ongoing disagreements about Willie's care. Even though Lisa asserts that her testimony raised several potential instances of neglect by Mattie, Mattie's own testimony disputed Lisa's version of events. The parties' "testimonies conflicted in many ways, [and] this Court has held that 'where there is conflicting testimony, the chancellor is the trier of fact and adjudicates the credibility of each witness.'" *Mask*, 411 So. 3d at 283-84 (¶25) (quoting *Lee v. Lee*, 154 So. 3d 904, 907 (¶12)

8

(Miss. Ct. App. 2014)). "The chancellor, by his presence in the courtroom, is best equipped to listen to witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Morland v. Morland*, 396 So. 3d 501, 507 (¶10) (Miss. Ct. App. 2024) (quoting *Mabus v. Mabus*, 890 So. 2d 806, 819 (¶56) (Miss. 2003)).

¶18.    We refuse to reevaluate the chancellor's determinations as to witness credibility and the weight he assigned to the witnesses' testimonies. *See id.* We also decline to second-guess the chancellor's resolution of the parties' conflicting testimony. *See Mask*, 411 So. 3d at 283-84 (¶25). Upon review, we cannot find that the chancellor abused his discretion in appointing Mattie as Willie's guardian and conservator. Despite Lisa's arguments to the contrary, we find credible evidence in the record to support the chancellor's determination that Mattie was best qualified to serve as Willie's conservator and guardian. We therefore find no abuse of discretion.

**II.    The chancellor did not err as a matter of law in the appointment.**

¶19.    Lisa also argues that the chancellor erred as a matter of law in appointing Mattie as Willie's guardian and conservator. Lisa contends that "[t]he chancellor manifestly failed to consider Willie's previous grant of his power of attorney to Lisa." In addition, relying on *In re DeMoville*, 856 So. 2d 607 (Miss. Ct. App. 2003), Lisa asserts that intra-family hostilities disqualified Mattie, Lisa, Murphy, and Minnie from serving as Willie's guardian and conservator. As a result, Lisa argues that the chancellor erred as a matter of law by failing to instead appoint the chancery court clerk to serve.

9

¶20. We first note that the final judgment clearly reflects that the chancellor considered Willie's grant of power of attorney to Lisa. However, after also taking into consideration the evidence and testimony presented at the hearing, the chancellor found that despite Willie's prior elections in his power of attorney and advanced healthcare directive, Mattie was the person best qualified to serve as his guardian and conservator and to make decisions about his finances and medical care. As discussed, we find that credible record evidence supported the chancellor's determination as to those issues.

¶21. We next address Lisa's contention that this Court's decision in *DeMoville* prevents Mattie from being appointed as Willie's guardian and conservator. In *DeMoville*, Dixie DeMoville Johnson petitioned the chancellor to appoint a conservator over the person and estate of her mother, Margie DeMoville. *DeMoville*, 856 So. 2d at 608 (¶1). Dixie filed her petition not only due to Margie's declining mental health but also because Dixie believed her younger sister, Margaret DeMoville, had transferred assets to herself for her own benefit from Margie's estate. *Id.* After the chancellor appointed Margaret as conservator over Margie's person and the chancery court clerk as conservator over Margie's estate, Margaret appealed. *Id.* at 608-09 (¶3).

¶22. On appeal, this Court found there was evidence showing "an overreaching by Margaret with regard to her mother's finances" and a pending "lawsuit against Margaret for conversion of funds from both the estate account [and] her mother's personal account . . . ." *Id.* at 611-12 (¶20). Based on the hostilities between Dixie and Margaret and the pending lawsuit that created a conflict of interest, this Court found no abuse of discretion in the

chancellor's refusal to appoint Margaret as conservator of Margie's estate. *Id.* at 612 (¶20). This Court noted that "because neither daughter could serve as conservator of the estate, the chancellor appointed the chancery [court] clerk . . . ." *Id.* at (¶21). Our opinion did not specifically state the underlying reason for Dixie's disqualification from serving as conservator (i.e., one of the same reasons that disqualified Margaret, another disqualifying basis, or Dixie's wish to instead have a third party appointed as conservator). Regardless of the underlying reason, the chancellor ultimately found that neither Dixie nor Margaret was able to serve as the conservator of Margie's estate. *Id.*

¶23. Here, Mattie specifically petitioned the chancellor to be appointed as Willie's guardian and conservator. As in *DeMoville*, hostilities certainly exist between the parties. *See id.* at 612 (¶20). But unlike in *DeMoville*, where the pending lawsuit alleging misappropriation of funds created a clear conflict of interest for Margaret, the parties here have asserted no such claims regarding Willie's finances. *Id.* Although Mattie and Lisa's disagreements are well documented and involve the management of Willie's finances, the parties' disagreements do not appear to have reached the same disqualifying level discussed in *DeMoville*. *Id.* Based on this key distinction, as well as the chancellor's consideration of the record evidence and the appropriate statutory guidance for appointing a conservator and guardian, we conclude that the chancellor did not err as a matter of law in appointing Mattie as Willie's guardian and conservator.

## CONCLUSION

¶24. Upon review, we conclude that credible record evidence supported the chancellor's

11

decision to grant Mattie's petition. Because the chancellor did not abuse his discretion or err as a matter of law in appointing Mattie as Willie's guardian and conservator, we affirm the chancellor's judgment.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.**